**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Continental Circuits LLC, | No. CV16-2026 PHX DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Intel Corporation, et al., | |
| Defendants. | |

Defendants Ibiden U.S.A. Corporation and Ibiden Co. Ltd. (collectively, "Ibiden") and Intel Corporation have filed separate motions to dismiss Plaintiff Continental Circuits LLC's complaint under Federal Rule of Civil Procedure 12(b)(6).  Docs. 49, 52.  After the motion was fully briefed (Docs. 49, 52, 54, 58, 60) and scheduled for oral argument, Plaintiff filed an amended complaint (Doc. 95).[1]  The Court heard oral argument on February 3, 2017.  For the following reasons, Defendants' motions to dismiss will be granted in part and denied in part.

## I.    Background.

Plaintiff alleges that Ibiden and Intel infringed four of its patents directly, indirectly by inducing and contributing to infringement, and willfully.  *See* Doc. 95,

---

[1]  The parties agree that the amended complaint "has no effect on the issues presented in the motions," and "Defendants maintain their arguments in their pending motions to dismiss as against the Amended Complaint."  Doc. 96, at 2 & n.1 (citations omitted).  The Court will therefore address the amended complaint in this order.

¶¶ 120-55.  The Court will recount Plaintiff's factual allegations, which must be taken as true for purposes of this motion.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted).

### A.  The Parties.

Continental Circuits Inc. was a manufacturer of printed circuit boards used in the computer industry.[2]  Doc. 95, ¶ 22.  Four employees of Continental Circuits Inc. observed that electrical devices made of alternating layers of conductive and non-conductive materials suffered from poor adhesion that caused the layers to separate.  *Id.*, ¶ 28.  The employees invented a "novel surface roughening technique" that used etching to produce a "non-uniformly roughened surface" and allowed for stronger adhesion between layers.  *Id.*, ¶¶ 28, 110.  In 1997, the co-inventors filed an application to patent the surface-roughening technology.  Doc. 52, at 6.[3]

Another Continental Circuits Inc. employee, sales representative Jeff Long, learned of this technology in the mid-1990s.  Doc. 95, ¶ 29.  Plaintiff alleges that Long, before his discharge from Continental Circuits Inc. in 1997, "entered into a business arrangement" with Defendant Ibiden, a manufacturer of package substrates used in computer electronics.  *Id.*, ¶¶ 30, 44.  In the course of this "arrangement," Long allegedly shared the technology described in the 1997 patent application with Ibiden.  Doc. 52, at 6; Doc. 95, ¶¶ 30-32;.  "In the late 1990s," Ibiden was supplying an increasing quantity of package substrates to Intel, a global computer-processor manufacturer, and other companies.  Doc. 52, at 6; Doc. 95, ¶¶ 33, 43, 147.  Like all of Intel's suppliers, Ibiden collaborated with Intel to develop specifications that Ibiden's products were expected to meet.  Doc. 95, ¶¶ 45-47.

---

[2] According to Ibiden and Intel, Continental Circuits Inc. changed its name to Microvia, Inc. in 1997.  Doc. 49, at 11 n.8; Doc. 52, at 6 n.2.  Microvia was dissolved in 2013.  Doc. 49, at 11 n.8; Doc. 52, at 6 n.2.  Plaintiff Continental Circuits LLC was formed in 2016, is a non-operating entity, and owns the patents-in-suit.  Doc. 49, at 11 n.8; Doc. 95, ¶ 19.

[3] Page citations are to numbers placed at the top of each page by the Court's CM/ECF system, rather than original page numbers.

1

      **B.     The Patents-in-Suit.**

2            The application to patent the surface-roughening technology became U.S. Patent

3   No. 6,141,870 (the "'870 patent"), issued November 7, 2000, and U.S. Patent No.

4   6,700,069 (the "'069 patent"), issued March 2, 2004.  *See id.*, ¶¶ 12-13.  In early 2005, "a

5   representative of Continental Circuits" sent a letter to Intel's Chief Legal Counsel,

6   informing him of the existence of the '870 and '069 patents and a related continuation

7   application.  *Id.*, ¶ 34.  The representative expressed an interest in licensing the portfolio

8   to Intel.  *Id.*  In a letter dated March 2, 2005, an Intel employee acknowledged receipt of

9   the letter and stated that "[a]n Intel attorney is reviewing the matter."  *Id.*, ¶ 36.  On April

10   21, 2005, Intel sent another letter advising the representative that "Intel has determined

11   not to pursue this matter."  *Id.*, ¶ 37.

12            Ibiden received the same offer in early 2005.  *See id.*, ¶ 35.  "[A] representative of

13   Continental Circuits" sent a letter to the General Counsel of Ibiden Circuits of America,

14   purporting to inform him of the existence of the '870 and '069 patents and the

15   continuation application, and expressing an interest in licensing the portfolio to Ibiden.

16   *Id.*  The amended complaint does not mention a response from Ibiden.

17            The continuation application referenced in the letters to Ibiden and Intel resulted in

18   issuance of the four patents at issue in this action:  U.S. Patent No. 7,501,582 (the "'582

19   patent"), issued March 10, 2009; U.S. Patent No. 8,278,560 (the "'560 patent"), issued

20   October 2, 2012; U.S. Patent No. 8,581,105 (the "'105 patent"), issued November 12,

21   2013; and U.S. Patent No. 9,374,912 (the "'912 patent"), issued June 21, 2016.  *See id.*,

22   ¶¶ 14-17, 34-35.  In 2014, "it was confirmed" during a "conversation . . . between a

23   representative of Continental Circuits and a business development manager at Ibiden"

24   that "the technology claimed in the patents-in-suit is still in use at Ibiden today."  *Id.*

25   ¶ 41.  When pressed for specifics, "the Ibiden manager became evasive and ended the

26   discussion."  *Id.*

27

28

C.      The Infringement Complaint.

Plaintiff initiated this action on June 22, 2016, one day after the '912 patent was issued.  *See* Doc. 1, ¶ 17.  The complaint sets forth one patent infringement count each against Ibiden and Intel, alleging direct infringement, induced infringement, and contributory infringement of the four patents-in-suit.  Doc. 95, ¶¶ 120-55.  The complaint also alleges that the infringement was willful.  *Id.*, ¶¶ 136, 154.

Plaintiff's amended complaint implicates hundreds of products and hundreds of patent claims.  The complaint defines "Accused Instrumentalities" to include "any version" of products from nine Intel product lines:  Atom, Core, Pentium, Celeron, Xeon, Itanium, and Quark series processors, and "any processors manufactured in a manner similar to those," and also Intel's Chipsets and Wireless Network Adapters.  Doc. 95, ¶ 103.  The amended complaint lists model numbers of individual products comprising each of these product lines.  *See id.*, ¶¶ 51, 56, 61, 66, 71, 76, 81, 86, 91.  Plaintiff claims that "any" of the products in these product lines – more than 1,000 total – "meet or embody the limitations of at least one claim" of the patents-in-suit.  Doc. 52, at 5; Doc. 95, ¶ 103; *see, e.g.*, Doc. 95, ¶¶ 52-55 (allegations as to Atom series).  The four patents contain 337 total claims.  Doc. 49, at 2; Doc. 52, at 5.  The amended complaint identifies, "by way of example and not limitation," claim 14 of the '560 patent as representative.  Doc. 95, ¶¶ 122, 141.  The term "Accused Instrumentalities" also encompasses "any Package Substrates manufactured by Ibiden for Intel *or others*."  *Id.* ¶ 103 (emphasis added).

The amended complaint includes magnified cross-section images of the roughened surface between conductive and non-conductive layers from five of Intel's product lines:  Core, Atom, Pentium, Celeron, and Xeon.  *Id.* ¶ 107.  It does not include cross-section images from the Itanium or Quark series processors, the chipsets, or the wireless network adapters.  In an effort to tie the images to these products, the amended complaint alleges that "[t]he images . . . are representative of the cross-sections of a substrate layer within each of the Accused Instrumentalities," and that "[t]here is no material difference in the

- 4 -

1   substrate layers between any versions of the Accused Instrumentalities." *Id.*, ¶¶ 108-09.

2   Plaintiff "rel[ies] on the cross-section images of the majority of the accused product lines

3   for a factual basis supporting its contentions of infringement." Doc. 54, at 11.

4   **II.    Legal Standard.**

5          A successful motion to dismiss under Rule 12(b)(6) must show either that the

6   complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its

7   theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).   A

8   complaint that sets forth a cognizable legal theory will survive a motion to dismiss as

9   long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief

10  that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.*

11  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when "the

12  plaintiff pleads factual content that allows the court to draw the reasonable inference that

13  the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S.

14  at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks

15  for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing

16  *Twombly*, 550 U.S. at 556).

17  **III.   Discussion.**

18         Ibiden and Intel argue that Plaintiff's direct infringement claims should be

19  dismissed because Plaintiff has not pled sufficient facts to make the claims plausible.

20  Doc. 49, at 2-3; Doc. 52, at 5.   They also argue that the inducement, contributory

21  infringement, and willfulness claims fail if the direct infringement claims fail, and, in any

22  event, that Plaintiff has not alleged facts to support the state of mind required for these

23  claims. Doc. 49, at 3; Doc. 52, at 5.

24         **A.    Direct Infringement.**

25         "[W]hoever without authority makes, uses, offers to sell, or sells any patented

26  invention, within the United States or imports into the United States any patented

27  invention during the term of the patent" is liable for direct infringement.   35 U.S.C.

28  § 271(a).  Section 271(g) extends direct infringement to patented processes:  "[w]hoever

1    without authority imports into the United States or offers to sell, sells, or uses within the

2    United States a product which is made by a process patented in the United States" is also

3    liable.

4                    **1.      Direct Infringement Pleading after Form 18.**

5             Until its abrogation on December 1, 2015, Rule 84 of the Federal Rules of Civil

6    Procedure directed that "[t]he forms in the Appendix suffice[d]" at the pleading stage.

7    Form 18 provided a sample complaint for patent infringement, and courts considering the

8    sufficiency of patent infringement complaints compared them to Form 18.  *e.Dig. Corp.*

9    *v. iBaby Labs, Inc.*, No. 15-5790, 2016 U.S. Dist. LEXIS 111689, at *4 (N.D. Cal. Aug.

10   22, 2016).[4]  "[T]o the extent any conflict exist[ed] between *Twombly* (and its progeny)

11   and the Forms regarding pleading requirements, the Forms control[led]."   *K-Tech*

12   *Telecomms. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013).

13            Because Form 18 was abrogated along with Rule 84 and the rest of the forms, it no

14   longer maintains any force.  *e.Digital*, 2016 U.S. Dist. LEXIS 111689, at *5-8; *accord*

15   *Avago Techs. Gen. IP (Sing.) PTE Ltd. v. Asustek Comput., Inc.*, No. 15-4525, 2016 U.S.

16   Dist. LEXIS 55655, at *12-13 (N.D. Cal. Apr. 25, 2016); *Atlas IP LLC v. Pac. Gas &*

17   *Elec. Co.*, No. 15-5469, 2016 U.S. Dist. LEXIS 60211, at *4 (N.D. Cal. Mar. 9,

18   2016); *InCom Corp. v. Walt Disney Co.*, No. 15-3011, 2016 U.S. Dist. LEXIS 71319, at

19   *5-6 (C.D. Cal. Feb. 4, 2016).  In Form 18's absence, *Twombly* and *Iqbal* govern direct

20   infringement claims.  *FootBalance Sys. v. Zero Gravity Inside, Inc.*, No. 15-1058, 2016

21   U.S. Dist. LEXIS 137978, at *6 (S.D. Cal. Oct. 4, 2016); *accord e.Digital*, 2016 U.S.

22   Dist. LEXIS 111689, at *7-8; *TeleSign Corp. v. Twilio, Inc.*, No. 16-2106, 2016 U.S.

23   Dist. LEXIS 123516, at *4 (C.D. Cal. Aug. 3, 2016); *Tannerite Sports, LLC v. Jerent*

24   *Enters., LLC*, No. 15-180, 2016 U.S. Dist. LEXIS 57942, at *9 (D. Or. May 2, 2016).

25            Plaintiff notes that one court in this Circuit has held otherwise.  Doc. 54, at 9 n.5

26   (citing *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 14-772, 2016 U.S. Dist.

27

28            [4] In a patent infringement action, "the law of the regional circuit" rather than
     Federal Circuit law applies in reviewing a motion to dismiss that involves purely
     procedural questions.  *Lyda v. CBS Corp.*, 838 F.3d 1331, 1337 (Fed. Cir. 2016).

LEXIS 5426 (D. Nev. Jan. 15, 2016)).  *Hologram* relied on an Advisory Committee Note statement that "[t]he abrogation of Rule 84 does not alter existing pleading standards or otherwise change the requirements of Civil Rule 8."  *Id.* at *7-8 n.1 (quoting Fed. R. Civ. P. 84 advisory committee's note to 2015 amendments).  *Hologram* assumed the phrase "existing pleading standards" included Form 18, and therefore applied Form 18 even after its abrogation.  *See Hologram*, 2016 U.S. Dist. LEXIS 5426, at *8 & n.1.

The Court finds *Hologram*'s rationale unpersuasive for the same reason as Judge Tigar in *e.Digital*:

> First, it is just as likely, if not more so, that the Advisory Committee used the phrase "existing pleading standards" simply to refer to *Twombly* and its progeny, but not including the exception recognized by *K-Tech*.  Indeed, nothing in the Advisory Committee note suggests that it was aware of the *K-Tech* exception to *Twombly*.  Second, *K-Tech*'s holding was premised on the fact that "to the extent any conflict exists between *Twombly* (and its progeny) and the Forms regarding pleading requirements, the Forms control."  Absent Form 18 itself, there is simply no support in the Federal Rules of Civil Procedure for a different pleading standard for direct patent infringement claims.  As a result, the Court concludes that former Form 18 no longer controls and that allegations of direct infringement are now subject to the pleading standards established by *Twombly* and *Iqbal*, requiring plaintiffs to demonstrate a "plausible claim for relief."

*e.Digital*, 2016 U.S. Dist. LEXIS 111689 at *7-8 (some quotation marks and citations omitted).

In addition, the Court notes that the records of deliberations leading up to the abrogation of Rule 84 and Form 18 suggest that the Advisory Committee was well aware of Form 18 and did not intend it to live on.  *See, e.g.*, Notes of Rule 84 Subcommittee Conference Call (Mar. 5, 2014), *in* Agenda Book for Advisory Committee on Civil Rules, Portland, OR, April 10-11, 2014, 557, 558 (2014) ("Form 18 is a good illustration of a serious problem with a Form.").  The Court joins the many other cases which have looked to *Iqbal* and *Twombly* for infringement pleading standards after December 1, 2015.  Decisions based on Form 18 are no longer good law. *See Scripps Research Inst. v.*

1  *Illumina, Inc.*, No. 16-661, 2016 U.S. Dist. LEXIS 161279, at *14 n.4 (S.D. Cal. Nov. 21,

2  2016).[5]

3  **2.    Sufficiency of the Direct Infringement Claims.**

4  Ibiden and Intel argue that even Plaintiff's most detailed direct infringement claim,

5  representative claim 14, fails because the amended complaint does not allege that each of

6  claim 14's limitations is met by the allegedly-infringing products.   Doc. 49, at 6-7;

7  Doc. 52, at 8-9.   They also argue that, to the extent Plaintiff relies on cross-section

8  images to support its allegations, the amended complaint does not provide images for

9  four product lines:  Itanium processors, Quark processors, chipsets, and wireless network

10  adapters.  Doc. 49, at 7-8; Doc. 52, at 10.  Plaintiff responds that the cross-section images

11  in the complaint illustrate that every claim has been met.  Doc. 54, at 11-13.

12  Subsequent developments during discovery have resolved some of these issues.

13  As part of its interrogatory responses, Plaintiff provided claim charts showing how the

14  accused products meet the limitations of 184 patent claims.  One of these charts applies to

15  claim 14 of the '560 patent, and the parties have stipulated that the sufficiency of claim

16  14 is no longer in dispute.  Doc. 103, ¶ 5.  At oral argument, Defendants' counsel stated

17  that Defendants no longer contest the sufficiency of any of the 184 charted claims.

18  This leaves 153 claims in the patents-in suit that have not been addressed in the

19  amended complaint or a claim chart.  This fact alone does not doom those claims, as a

20  chart specifically identifying where each limitation of an asserted claim can be found in

21  an accused instrumentality is not required absent a local rule stating otherwise.  *See Fr.*

22  *Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-4967, 2013 U.S. Dist. LEXIS

23  63823, at *4-5 (N.D. Cal. May 3, 2013).

24  Nor is Plaintiff required, as Defendants maintain, to allege facts supporting every

25  limitation of every claim in each of the four patents-in-suit.  *See* Doc. 60, at 6.  The case

26  law does not support such an exacting standard.  Plaintiff must provide factual allegations

27

28  _____

[5] As the chair of the Advisory Committee when Rule 84 was abrogated, the undersigned fully concurs with the majority view on this issue.

regarding every limitation of at least one claim of each allegedly-infringed patent. *See*, *e.g.*, *CG Tech. Dev., LLC v. FanDuel, Inc.*, No. 16-801, 2016 U.S. Dist. LEXIS 144078, at *10 (D. Nev. Oct. 18, 2016) (direct infringement pleading "requires plausible allegations as to all elements of *a* cause of action," i.e., "each limitation of the patent claim at issue" (emphasis added)); *e.Digital*, 2016 U.S. Dist. LEXIS 111689, at *8, *10 ("each of the limitations found in at least one asserted claim"); *TeleSign*, 2016 U.S. Dist. LEXIS 123516, at *7-8 ("each element of at least one claim"); *Atlas IP, LLC v. Exelon Corp.* (*Exelon*), 189 F. Supp. 3d 768, 2016 U.S. Dist. LEXIS 64571, at *12 (N.D. Ill. 2016) ("each element of at least one claim"); *see also Glob. Tech Led, LLC v. Every Watt Matters, LLC*, No. 15-61933, 2016 U.S. Dist. LEXIS 122111, at *9 (S.D. Fla. May 18, 2016) (plaintiff failed to "sufficiently tie any specific operation to *a* patent claim" (emphasis added)).[6]

This pleading standard requires Plaintiff to address every limitation of at least one claim of the each of the '560, '582, '105, and '912 patents. The parties' stipulation as to the sufficiency of claim 14 of the '560 patent suffices for infringement of the '560 patent. Ibiden and Intel do not dispute that at least one claim in each of the three remaining patents has been sufficiently disclosed in the claim charts. Accordingly, the motions to dismiss are denied on this basis.[7]

_____

[6] Defendants cite dicta in *Asghari-Kamrani v. United Services Automobile Ass'n*, No. 15-478, 2016 U.S. Dist. LEXIS 48012, at *9-11 (E.D. Va. Mar. 22, 2016), where the court required the plaintiffs to "detail how each claim is infringed." *See id.* at *11. But only one patent was at issue, and the court found that the complaint did not sufficiently allege infringement of any of its claims. The Court finds the dicta in *Asghari-Kamrani* to be contrary to the majority of cases cited above.

[7] The Court does not adopt the view that failure to state a claim under Rule 12(b)(6) can be solved through discovery responses. Complaints must state a sufficient cause of action. But Defendants made clear before and during the hearing that they no longer ask the Court to dismiss the complaint with respect to the claims disclosed in the claim charts. *See* Doc. 103 (stipulating that some issues are no longer before the Court). The Court also notes that although a plaintiff need not "prove its case at the pleading stage," *R+L Carriers, Inc. v. DriverTech LLC* (*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*), 681 F.3d 1323, 1339 (Fed. Cir. 2012), Plaintiff must make the required showing for each claim it expects to survive a motion for summary judgment. *See TeleSign*, 2016 U.S. Dist. LEXIS 123516, at *7 ("a product must practice all elements of a patent claim" to directly infringe).

1    In addition to the cross-section images included in the amended complaint, which
2    represent five Intel product lines, Plaintiff has provided Defendants with a cross-section
3    from a Quark series processor as part of its discovery responses.  Doc. 103, ¶ 6.  The
4    parties have stipulated that the Quark series is no longer at issue in this motion.[8]  *Id.*

a.    Product Claims.

5    
6    Defendants concentrate their attack on the three product lines for which no cross-
7    sections have been supplied:  Itanium series processors, chipsets, and wireless network
8    adapters.  As to those product lines, Plaintiff alleges only that the other lines' cross-
9    sections are "representative of the cross-sections of a substrate layer within each of the
10   Accused Instrumentalities," and that "[t]here is no material difference in the substrate
11   layers between any versions of the Accused Instrumentalities."  Doc. 95, ¶¶ 108-09.
12   These are conclusory allegations.  They provide no facts to connect the six product lines
13   for which cross-sections have been provided to the three product lines for which they
14   have not.  In the absence of such facts, Plaintiff has failed to plead a plausible claim of
15   direct infringement with respect to Itanium processors, chipsets, and wireless network
16   adapters.  Conclusory allegations cannot take the place of well-pleaded facts.  *See Iqbal*,
17   556 U.S. at 678-79.  The motions to dismiss will be granted for these three product lines.
18   The Court does not hold that a cross-section image for each product line is required, but
19   Plaintiff must supply enough facts to make plausible the allegations that the images of
20   other product lines "are representative" of the three product lines and that there is "no
21   material difference" between them.

22   Ibiden makes three additional arguments as to its products.  First, Ibiden argued in
23   its motion that the complaint contains no allegations that any of its products infringe.
24   The amended complaint added allegations of infringement by Ibiden substrates.  *See*
25   Doc. 95, ¶¶ 96-102.  This issue has been resolved.

26   
27   
28   [8]  Although each cross-section provided in paragraph 107 of the amended complaint purports to represent an entire product line, Ibiden and Intel do not contend that allegations regarding each individual product within that product line are necessary.

1    Second, Ibiden argues that Plaintiff failed to allege that any of the cross-section
2    images in paragraph 107 of the amended complaint are actually of Ibiden products.
3    Doc. 49, at 8.   The amended complaint alleges, however, that the images are of "the
4    Accused Instrumentalities" (Doc. 95, ¶¶ 107-09), a phrase that includes Ibiden products
5    (*id.*, ¶ 103).

6    Third, Ibiden argues that Plaintiff's allegations of infringement by unidentified
7    Ibiden products manufactured for unidentified companies are deficient.   Doc. 49, at 15.
8    The Court agrees.   The amended complaint contains no facts about those unspecified
9    products, and thus sets forth no plausible basis for infringement by them.   Ibiden's
10   motion to dismiss will be granted with respect to products other than those identified in
11   the amended complaint.

12                              **b.    Method Claims.**

13   Unlike a product claim, which alleges that a specific product infringes a patent, a
14   method claim applies "to a process, which consists of a series of acts or steps."   *In re*
15   *Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002).   Plaintiff asserts method infringement
16   claims against Ibiden – apparently, that Ibiden uses patented processes in the creation of
17   its substrates.   Doc. 49, at 3, 10.   Although the original complaint alleged only direct
18   method infringement under § 271(a) (Doc. 1, ¶¶ 116, 128, 133, 140), the amended
19   complaint adds claims of method infringement under § 271(g) and allegations tracking
20   the language of that section (Doc. 95, ¶¶ 115-17, 125-26, 138, 144-45).

21   At oral argument, Defendants stated that they do not challenge Plaintiff's § 271(g)
22   method claims on pleading grounds.   The Court therefore will not address those claims.
23   Ibiden does assert, however, that Plaintiff's method claims under § 271(a) are deficient
24   for two reasons.

25   First, Ibiden argues that a § 271(a) method claim must allege that the infringing
26   manufacturing process is used in the United States, which Plaintiff has not alleged.
27   Doc. 49, at 3, 10.   Ibiden is correct that "[u]nder section 271(a), the concept of 'use' of a
28   patented method or process is fundamentally different from the use of a patented system

1   or device." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005).

2   "[A] process cannot be used 'within' the United States as required by section 271(a)

3   unless each of the steps is performed within this country." *Id.* at 1318. Because the

4   amended complaint does not allege that Ibiden uses any of the steps of a patented process

5   in the United States, this type of § 271(a) method claim will be dismissed.

6        At oral argument, Plaintiff argued that even though a patented manufacturing

7   process is performed outside the United States, method infringement occurs when

8   products made by that process are imported into the United States for sale.

9   Section 271(a) does apply to a person or entity who "offers to sell, or sells any patented

10  invention, within the United States or imports into the United States any patented

11  invention," 35 U.S.C. § 271(a), but the Federal Circuit has repeatedly declined to decide

12  "whether method claims can be infringed under the 'sells' and 'offers to sell' prongs" of

13  the provision, *W.L. Gore & Assocs. v. Medtronic, Inc.*, 874 F. Supp. 2d 526, 543 (E.D.

14  Va. 2012). The Federal Circuit has, however, strongly suggested in dicta that they

15  cannot. *See NTP*, 418 F.3d at 1320 ("[T]he legislative history of section 271(a) indicates

16  Congress's understanding that method claims could only be directly infringed by use.");

17  *see also Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008)

18  (for a method claim to infringe under the "sell" prong of § 271(a), the seller must be

19  selling the *process* itself). As one district court explained:

20       Since the Federal Circuit appears to have concluded that [the "sale"] prong
21       does not apply to method claims, and since the law is currently unclear as
         to whether selling a final *product* within the United States would even
22       qualify as the 'sale' or 'performance' of a *method* claim, it appears the
         proper course is . . . to consider infringement only under 271(g).
23

24  *W.L. Gore*, 874 F. Supp. 2d at 545 (emphasis added).

25       Second, Ibiden argues that even if Plaintiff's § 271(a) method claim has a sound

26  legal basis, Plaintiff has not alleged sufficient facts to support such a method claim.

27  Doc. 49, at 10. The Court agrees. Just as a "product claim" of direct infringement

28  requires facts sufficient to "plausibly allege that the accused product practices each of the

limitations" of an asserted claim, *e.Digital*, 2016 U.S. Dist. LEXIS 111689, at *8, a method claim requires "pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed," *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016).  The amended complaint lacks sufficient facts to show that Ibiden uses all steps of a patented process in the production of its substrates.

The Court will grant Ibiden's motion to dismiss Plaintiff's § 271(a) method claims for lack of a factual basis.  In light of this holding, the Court need no decide whether method claims are available under § 271(a) for merely importing and selling products.[9]

## B.    Indirect Infringement.

"Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement."  *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 876 n.4 (Fed. Cir. 1995); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).  As a result, where Defendants' motions to dismiss Plaintiff's direct infringement claims have been granted, Plaintiff's related allegations of indirect and willful infringement must also be dismissed.

Because some of Plaintiff's direct infringement claims have survived, however, the Court must address the induced infringement, contributory infringement, and willfulness claims.  An alleged infringer's state of mind is irrelevant to strict-liability direct infringement claims, but it is a key component of indirect and willful infringement. *See Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1926 (2015).

_____

[9] Plaintiff stated during the hearing that even if the Court were to dismiss method claims under § 271(a), it should preserve Plaintiff's "product-by-process" claims, which it described as infringement by sale of a product made through a patented process. Doc. 110 at 49-50.  This argument does not seem to match the case law.  Product-by-process claims are not expressly mentioned in the patent statute and were developed for the purpose of "enabl[ing] an applicant to claim an otherwise patentable product that resists definition by other than the process by which it is made."  *In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985).  Product-by-process claims need to be "defined by the process of making [them]" because of "language limitations."  *McAirlaids, Inc. v. Kimberly-Clark Corp.*, No. 13-193, 2013 U.S. Dist. LEXIS 181611, at *6 (W.D. Va. Dec. 31, 2013) (alteration in original) (quoting *In re Bridgeford*, 357 F.2d 679, 682 (C.C.P.A. 1966)). The Court does not understand any of the products at issue in this case to fall into this category.

- 13 -

### 1.    Induced Infringement.

Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006) (en banc).

### a.    Knowledge.

Intel and Ibiden argue that they could not have had the requisite knowledge of the patents-in-suit until, at the earliest, the dates when the patents were issued.  *See* Doc. 49, at 11-12; Doc. 52, at 18-19.  Plaintiff responds that "no *per se* rule" requires a patent to have been issued before it can serve as a basis for knowledge in the indirect-infringement context.[10]  Doc. 54, at 18.  Some courts have held that patent applications alone are insufficient.  *See, e.g., Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 2016 U.S. Dist. LEXIS 79380, at *17-18 (N.D. Cal. 2016) ("defendant's knowledge of a related patent and a patent application" was "insufficient to support an inference that defendant was aware – or at least willfully blind – to the fact that their products were infringing on the Patents prior to the filing of the complaint")[11]; *Vasudevan Software, Inc. v. Tibco Software, Inc.*, No. 11-6638, 2012 U.S. Dist. LEXIS 69952, at *7-8 (N.D. Cal. May 17, 2012) (related patent and continuation application did

---

[10] Plaintiff cites a one-page memorandum order in a district court outside this Circuit as "authority directly on point."  Doc. 54, at 18; *see also* Doc. 55-7.  But because most of the order was spent analyzing willfulness under a now-abrogated recklessness standard (see discussion below) that the court recognized was vulnerable to Supreme Court review, its persuasive value is limited.  *See Chestnut Hill Sound Inc. v. Apple Inc.*, No. 15-261, slip op. (Doc. 53) at 1 (D. Del. Feb. 29, 2016).  Of induced infringement, the court said only that the motion to dismiss was denied "[f]or similar reasons."  *Id.*

[11] The allegations in *Windy City* were insufficient to establish *pre*-suit knowledge, but sufficient to establish *post*-suit knowledge.  2016 U.S. Dist. LEXIS 79380, at *18-19.  This distinction may become relevant as this litigation progresses, especially with respect to the '912 patent, which was issued just one day before the original complaint was filed.  *See* Doc. 1, ¶ 17.  Courts are split on "whether post-suit knowledge of a patent [beginning at the time of service] satisfies the knowledge element for indirect infringement claims."  *Simplivity Corp. v. Springpath, Inc.*, No. 15-13345, 2016 U.S. Dist. LEXIS 155017, at *20-22 (D. Mass. July 15, 2016)

1   not establish actual knowledge, because "[t]o willfully infringe a patent, the patent must

2   exist and one must have knowledge of it" (quoting *State Indus., Inc. v. A.O. Smith Corp.*,

3   751 F.2d 1226, 1236 (Fed. Cir. 1985))).

4          It is also the case, however, that additional "specific, supporting facts" pled in

5   conjunction with the related patent and continuation application may suffice to establish

6   knowledge at the pleading stage.  *See Vasudevan*, 2012 U.S. Dist. LEXIS 69952, at \*20.

7   "While true that indirect infringement requires actual knowledge of the patent-in-suit, it

8   equally is true that 'knowledge of the patents may be proven by either direct or

9   circumstantial evidence.'"  *Simplivity Corp. v. Springpath, Inc.*, No. 15-13345, 2016 U.S.

10  Dist. LEXIS 155017, at \*34 (D. Mass. July 15, 2016) (citation omitted) (quoting *SynQor,*

11  *Inc. v. Artesyn Techs., Inc.*, No. 07-497, 2011 U.S. Dist. LEXIS 91668, at \*11 (E.D. Tex.

12  Aug. 17, 2011), *aff'd*, 709 F.3d 1365 (Fed. Cir. 2013)).  In *Simplivity*, the plaintiff alleged

13  that while its patent application was pending and publicly available on the internet, a co-

14  founder of the "sophisticated" infringing entity intentionally obfuscated his identity and

15  "surreptitiously investigated" the technology at a trade show.  2016 U.S. Dist. LEXIS

16  155017, at \*30-32.   After the trade show, the infringer released a similar technology.  *Id.*

17  at \*31-32.   Relying on this circumstantial evidence, the court concluded that the

18  allegations were sufficient to support a reasonable inference of pre-suit knowledge.  *Id.* at

19  \*32-34.

20         For similar reasons, the Court finds Plaintiff's allegations of Ibiden's knowledge

21  sufficient to survive a motion to dismiss.  The amended complaint alleges that Jeff Long

22  took the patented technology to Ibiden in 1997 as part of his "business arrangement"

23  (Doc. 95, ¶¶ 29-32); that a representative of Continental Circuits contacted Ibiden in 2005

24  regarding patents from the same family, as well as the continuation application that

25  became the patents-in-suit (*id.*, ¶ 35); and that another representative confirmed in a 2014

26  conversation with an Ibiden manager that Ibiden was still using that same technology (*id.*,

27  ¶ 41).   Taking these factual allegations as true and drawing reasonable inferences,

28  Plaintiff has plausibly alleged pre-suit knowledge of the patents-in-suit.  It is plausible

1    that Ibiden learned of the technology from Jeff Long in 1997, learned from the 2005

2    communications that two patents had been issued on the technology and a continuation

3    application was pending, was therefore aware that the technology it acquired from Long

4    was being patented by the inventors, and then confirmed in 2014 that it was still using the

5    technology that had been patented.  Certainly there are other interpretations of the alleged

6    facts, but this interpretation is plausible and Rule 8 requires nothing more.   As the

7    Supreme Court has instructed, the plausibility standard "is not akin to a 'probability

8    requirement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).[12]

9         Whether Plaintiff has pled sufficient facts to establish Intel's pre-suit knowledge is

10   a closer question.  The amended complaint presents three relevant factual allegations:

11   (1) meetings occurred between Continental Circuits and Intel in the late 1990s regarding

12   the design and manufacture of circuit boards; (2) in 2005, correspondence was exchanged

13   between Continental Circuits' representative and Intel regarding the related patents and

14   continuation application; and (3) Intel is sophisticated and familiar with the patent

15   system.  Similar allegations were found insufficient in *Vasudevan*, where the plaintiff

16   gave an informational presentation to the defendants before the patent-in-suit was issued.

17   2012 U.S. Dist. LEXIS 69952, at *7-8.   The court held that knowledge was not

18   reasonably inferable as, absent more, "knowledge of the patent allegedly infringed simply

19   cannot be inferred from mere knowledge of *other* patents, even if somewhat similar."  *Id.*

20   at *9 (emphasis in original).  The Court reaches the same conclusion with respect to Intel.

21   Plaintiff's allegations suggest that Intel had reason to know of the patent application, but

22   nothing to show that Intel knew of the actual patents or that the technology had been

23   invented by the patent applicants.  And the Court cannot conclude that sophistication in

24

25

26

27

28
     _____

     [12]  Ibiden argues that a number of these allegations are factually inaccurate.
     Doc. 49 at 11-14.  The Court does not resolve factual disputes in a Rule 12(b)(6) motion
     to dismiss, but instead takes Plaintiff's allegations as true.

1    patent matters provides the missing link.  Because Plaintiff has failed to allege knowledge

2    sufficiently, Intel's motion to dismiss the induced infringement claim will be granted.[13]

3                              **b.    Specific Intent.**

4         The second element of induced infringement is specific intent, which "can be

5    demonstrated by circumstantial evidence, but mere knowledge of possible infringement

6    does not suffice."  *DRG-Int'l, Inc. v. Bachem Ams., Inc.*, No. 15-7276, 2016 WL

7    3460791, at *5 (C.D. Cal. Jan. 5, 2016) (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*,

8    581 F.3d 1317, 1328 (Fed. Cir. 2009)).   An allegation "that the defendant is . . .

9    instructing customers how to use the products in an infringing manner" will usually

10   survive a motion to dismiss.  *Unilin Beheer B.V. v. Tropical Flooring*, No. 14-2209, 2014

11   U.S. Dist. LEXIS 85955, at *13-14 (C.D. Cal. June 13, 2014).

12        Plaintiff has sufficiently alleged intent with respect to Ibiden.  Plaintiff provides a

13   sufficient factual basis for its assertion that Ibiden knew of the patents, as discussed

14   above, and there is no dispute that Ibiden manufactured the accused products with full

15   knowledge that they would be used in Intel products.  This plausibly suggests that Ibiden

16   acted with a specific intent to encourage Intel's infringement of the patents.  *See DSU*

17   *Med.*, 471 F.3d at 1304.

18        Plaintiff argues that Intel's specific intent is shown by its collaboration with Ibiden

19   to develop product specifications, and an implicit threat that Intel would end its business

20   relationship with Ibiden if those specifications were not met.  Doc. 54, at 18-19; *see also*

21   Doc. 95, ¶¶ 45-47.  Although this might be sufficient if Plaintiff had alleged sufficient

22   facts to show that Intel knew of the patents, it has not.  In the absence of such knowledge,

23   the Court cannot conclude that mere collaboration with Ibiden, or a common-sense

---

25   [13] Plaintiff noted at oral argument that the knowledge element can also be satisfied
     through willful blindness.  *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754,
26   768 (2011).   Willfully blind infringers "deliberately shield[] themselves from clear
     evidence of critical facts that are strongly suggested by the circumstances."  *Id.* at 766.
27   One who is willfully blind "can almost be said to have actually known the critical facts" –
     "a 'known risk' that the induced acts are infringing" and "'deliberate indifference' to that
28   risk" are not enough."  *Id.* at 769-70.  Because this issue was not briefed, and the Court
     cannot see sufficient facts in the amended complaint to support this theory, willful
     blindness does not save Plaintiff's induced infringement claim against Intel.

1 requirement that Ibiden abide by Intel's product specifications, constitutes a sufficient

2 showing of specific intent to induce infringement.

3         **2.    Contributory Infringement.**

4      A contributory infringer sells a component knowing that it is especially designed

5 for use in a patented invention and is not suitable for a substantial noninfringing use.

6 *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1316 (Fed. Cir.

7 2010); *see Ricoh*, 550 F.3d at 1337.   Contributory infringement requires that (1) the

8 accused infringer had knowledge of the infringing nature of the patent, (2) the product

9 has no substantial noninfringing use, and (3) the product is a material part of the

10 invention.   *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).   "Like

11 induced infringement, contributory infringement requires knowledge of the [patent-in-

12 suit] and knowledge of patent infringement."   *Commil*, 135 S. Ct. at 1926 (citing *Aro*

13 *Mfg. Co. v. Convertible Top Replacement Co.* (*Aro II*), 377 U.S. 476, 488 (1964)).

14      As discussed above, Plaintiff has sufficiently alleged Ibiden's knowledge of the

15 patents-in-suit.   The amended complaint also contains factual allegations to support an

16 inference that accused products were known by Ibiden "to be especially made . . . for use

17 in an infringement."   *See* 35 U.S.C. § 271(c).   As noted above, Ibiden fully understood

18 that its products would be used in Intel products for purposes that would infringe if the

19 patents-in-suit are valid and infringed.   Doc. 95, ¶¶ 45-47.   Ibiden's motion to dismiss the

20 contributory infringement claims will be denied.

21      Plaintiff has failed to plead sufficient facts to show that Intel knew of the patents-

22 in-suit.   Accordingly, Intel's motion to dismiss the contributory infringement claims will

23 be granted.

24      **C.    Willfulness.**

25      Ibiden and Intel both rely on *Vasudevan* to support their arguments that because

26 Plaintiff's allegations of knowledge of the patents-in-suit are insufficient, its willfulness

27 claims must fail as well.   *See* Doc. 49, at 14-15; Doc. 52, at 20; Doc. 58, at 13-14;

28

Doc. 60, at 11. Plaintiff responds that it "adequately pled [the] knowledge and intent required for willfulness" in its induced infringement analysis. Doc. 54, at 21.

Although the topic was briefly addressed at oral argument, neither party has briefed the effect of the 2016 abrogation of the "objective recklessness" test for willfulness. That test required a party alleging willful infringement to demonstrate "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement" and that "this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), the Supreme Court found the test inconsistent with the enhanced damages provisions of 35 U.S.C. § 284, for which willfulness is a prerequisite. *Id.* at 1928. The Court did away with the "unduly rigid" requirement that "objective recklessness" be shown in every case, instead "limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement." *Id.* at 1232, 1235. After *Halo*, egregiousness is the touchstone of the willfulness inquiry. *See id.* at 1934 ("[S]uch punishment should generally be reserved for egregious cases typified by willful misconduct.").

Knowledge remains a key factor in determining willfulness. *See id.* at 1933 ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct."); *see also id.* ("[A] person is reckless if he acts '*knowing* or *having reason to know* of facts which would lead a reasonable man to realize' his actions are unreasonably risky." (emphasis in original) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007))). For this reason, Plaintiff's failure to plead sufficient facts to show Intel's knowledge of the patents is fatal to its willfulness claim.

The sufficiency of Plaintiff's willfulness claims against Ibiden is less certain. Under *Halo*, knowledge is a necessary condition of willfulness, but not a sufficient one. *See* 136 S. Ct. at 1936 (Breyer, J., concurring) (knowledge of the patent "*and nothing more*" does not necessitate enhanced damages (emphasis in original)). Courts in this

1    Circuit have held, after *Halo*, that awareness of the patent and continued use of the

2    infringing product despite "an objectively high likelihood" of infringement or "reckless

3    disregard" of that risk no longer compel a finding of willfulness.  *See CG Tech. Dev.,*

4    *LLC v. Big Fish Games, Inc.*, No. 16-857, 2016 U.S. Dist. LEXIS 115594, at *42-44 (D.

5    Nev. Aug. 29, 2016) (granting motion to dismiss where plaintiffs "fail[ed] to allege any

6    facts suggesting that Defendant's conduct is 'egregious . . . beyond typical infringement'"

7    (second alteration in original) (quoting *Halo*, 136 S. Ct. at 1936)).  Plaintiff has alleged

8    sufficient facts to show knowledge, but not to show the additional element of

9    egregiousness.  Ibiden's motion to dismiss as to willfulness will be granted.

10          **IT IS ORDERED:**

11          1.    Ibiden's motion to dismiss (Doc. 49) is **granted in part and denied in**

12                **part**.  The motion is granted with respect to (a) Itanium series processors,

13                chipsets, and wireless network adapters; (b) method claims brought under

14                § 271(a); (c) unidentified Ibiden products produced for unidentified users

15                other than Intel; and (d) willfulness.  The motion is otherwise denied.

16          2.    Intel's motion to dismiss (Doc. 52) is **granted in part and denied in part**.

17                The motion is granted with respect to (a) Itanium series processors,

18                chipsets, and wireless network adapters; (b) induced infringement;

19                (c) contributory infringement; and (d) willfulness.  The motion is otherwise

20                denied.

21          3.    Continental Circuits, LLC shall file a second amended complaint **within 20**

22                **days of the filing of this order**.  The amended complaint need not include

23                or attach all 184 claim charts provided to Defendants, but should reference

24                those charts.   The amended complaint shall include sufficient factual

25                allegations to address all limitations of at least one claim of each of the four

26                patents-in-suit.

27          4.    Counsel shall notify the Court if, after amendment in accordance with the

28                foregoing discussion, Defendants still view Plaintiff's amended complaint

as insufficient, in which case the Court will schedule a telephone conference to discuss whether another motion to dismiss is warranted.[14]

Dated this 21st day of February, 2017.

David G. Campbell
United States District Judge

---

[14] The Court has used Lexis cites throughout this order because the parties used many such cites in their briefing.  In future briefing, the Court prefers Westlaw cites where possible.