1  Chad S. Campbell (State Bar No. 012080)
   CSCampbell@perkinscoie.com
2  PERKINS COIE LLP
   2901 N. Central Avenue
3  Suite 2000
   Phoenix, AZ 85012
4  Tel: (602) 351-8000 / Fax: (602) 648-7000

5  William F. Lee (*admitted pro hac vice*)
   William.Lee@wilmerhale.com
6  Joseph J. Mueller (*admitted pro hac vice*)
   Joseph.Mueller@wilmerhale.com
7  WILMER CUTLER PICKERING HALE
       AND DORR LLP
8  60 State Street
   Boston, MA 02109
9  Tel: (617) 526-6000 / Fax: (617) 526-5000

10 Nina S. Tallon (*admitted pro hac vice*)
   Nina.Tallon@wilmerhale.com
11 WILMER CUTLER PICKERING HALE
       AND DORR LLP
12 1875 Pennsylvania Avenue NW
   Washington, DC  20006
13 Tel: (202) 663-6000 / Fax: (202) 663-6363

14 *Attorneys for Defendants Intel Corporation, Ibiden U.S.A.
   Corporation, and Ibiden Co. Ltd.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Continental Circuits LLC,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Intel Corporation;<br>Ibiden U.S.A. Corporation; and<br>Ibiden Co. Ltd.<br><br>　　　　　　　Defendants. | Case No. CV-16-2026-PHX-DGC<br><br>**DEFENDANTS INTEL CORPORATION, IBIDEN U.S.A. CORPORATION, AND IBIDEN CO. LTD.'S PARTIAL MOTION TO DISMISS PLAINTIFF CONTINENTAL CIRCUITS LLC'S SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**(Oral Argument Requested)**<br>**FILED UNDER SEAL (REDACTED VERSION)** |

**TABLE OF CONTENTS**

**Page**

MOTION ........................................................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1
I.     ALLEGATIONS AGAINST UNIDENTIFIED IBIDEN PRODUCTS .................. 3
II.    INDUCEMENT CLAIMS AGAINST INTEL ......................................................... 6
III.   WILLFULNESS CLAIMS AGAINST INTEL AND IBIDEN ............................. 11
IV.   CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 1, 6, 9

*Boundaries Solutions Inc. v. CoreLogic, Inc.*,
  2014 WL 7463708 (N.D. Cal. Dec. 30, 2014) ............................................................. 10

*CG Technology Development, LLC v. Zynga, Inc.*,
  2017 WL 662489 (D. Nev. Feb. 17, 2017) ................................................................... 14

*Infineon Technologies AG v. Volterra Semiconductor Corp.*,
  2012 WL 3939353 (N.D. Cal. Sept. 10, 2012) ........................................................... 5-6

*Jenkins v. LogicMark, LLC*,
  2017 WL 376154 (E.D. Va. Jan. 25, 2017) .............................................................. 13-14

*LaserDynamics USA, LLC v. Cinram Group, Inc.*,
  2015 WL 6657258 (S.D.N.Y. Oct. 30, 2015) ................................................................. 5

*LML Holdings, Inc. v. Pacific Coast Distributing Inc.*,
  2012 WL 1965878 (N.D. Cal. May 30, 2012) ............................................................... 9

*Lyda v. CBS Corp.*,
  838 F.3d 1331 (Fed. Cir. 2016) ..................................................................................... 5

*McRee v. Goldman*,
  2012 WL 3745190 (N.D. Cal. Aug. 28, 2012) ............................................................. 10

*Martin v. Medtronic, Inc.*,
  63 F. Supp. 3d 1050 (D. Ariz. 2014) ............................................................................. 2

*MONEC Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012) ............................................................................. 10

*PageMelding, Inc. v. ESPN, Inc.*,
  2012 WL 1534844 (N.D. Cal. Apr. 30, 2012) ............................................................... 5

*Proxyconn Inc. v. Microsoft Corp.*,
  2012 WL 1835680 (C.D. Cal. May 16, 2012) ............................................................. 10

*State Industries, Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) .................................................................................. 9

*VIA Technologies, Inc. v. ASUS Computer International*,
   2015 WL 3809382 (N.D. Cal. June 18, 2015) ............................................................ 10

*Via Vadis, LLC v. Skype, Inc.*,
   2012 WL 261367 (D. Del. Jan. 27, 2012)..................................................................... 5

*Xpoint Techs., Inc. v. Microsoft Corp.*,
   730 F. Supp. 2d 349 (D. Del. 2010) ........................................................................... 10

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ....................................................................................... 2

**Statutes**

35 U.S.C. § 271 ....................................................................................................... 1, 3, 5

**Other Authorities**

Federal Rule of Civil Procedure 8 ....................................................................................... 6

Federal Rule of Civil Procedure 12(b)(6).......................................................................... 1

**MOTION**

Intel Corporation ("Intel"), Ibiden U.S.A. Corporation, and Ibiden Co. Ltd. (collectively, "Ibiden") certify that the parties have met and conferred regarding the deficiencies in the Second Amended Complaint filed by Continental Circuits LLC ("Continental Circuits"), and Continental Circuits has declined to further amend the pleading. Intel and Ibiden therefore move to dismiss the Second Amended Complaint, in part, with prejudice under Federal Rule of Civil Procedure 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

Continental Circuits' Second Amended Complaint fails to cure several of the deficiencies the Court identified when dismissing part of the original and First Amended Complaint (together, the "Dismissed Complaint").[1]

*First*, in the new pleading, Continental Circuits purports to accuse *every* product ███████████████████████████████████████████████. But the pleading recites no concrete facts explaining how █████████████████████████████████████████ could plausibly support a claim for patent infringement under U.S. law, even under § 271(g). The pleading does not identify any ████ ███████ imported into or sold within the United States. Instead, the new allegations simply amount to conclusory assertions based on parroted claim language, just like the allegations that the Court already found insufficient to state a claim for relief under *Iqbal*.

*Second*, the Court previously dismissed induced infringement claims against Intel given the lack of factual allegations that Intel had pre-suit knowledge of the asserted patents. In an apparent attempt to cure that deficiency, the Second Amended Complaint

---

[1] As discussed at the March 24 hearing, this motion does not seek dismissal of the claims alleging direct infringement based on accused Itanium and "chipset" products (for which Continental Circuits has supplemented its factual allegations). Nor does this motion address any claim of direct infringement by the Ibiden parties of method claims pursuant to 35 U.S.C. § 271(a)—given Continental Circuits' meet-and-confer assurances that it is not asserting such a claim in this case.

- 1 -

adds generic allegations directed to a supposed prior "coordinat[ion]" between Intel and a prior entity associated with the patent applicants.  But because Continental Circuits has pleaded no details regarding that alleged "coordinat[ion]"—and no indication of how it allegedly gave Intel notice of the asserted patents—the inducement claims against Intel remain deficient and should be dismissed once again.

*__Third__*, Continental Circuits also has renewed its previously dismissed claims for willful infringement against Intel and Ibiden.  The new willfulness claim against Intel should be dismissed given the above lack of factual allegations suggesting that Intel had pre-suit notice of any asserted patent.  And the willfulness claim against both defendants also should be dismissed given the complete dearth of factual allegations suggesting that Intel or Ibiden engaged in "egregious" conduct sufficient to sustain a willfulness claim under *Halo*.  Such factual allegations are a necessary predicate to any willfulness claim, as the Court has already concluded in its prior dismissal ruling.

In sum, despite having multiple opportunities to plead actionable claims over the nine months since service of its complaint, Continental Circuits has still failed to come forward with plausible allegations supporting the claims detailed above.  As such, Defendants respectfully request that the Court dismiss those claims with prejudice.  *See Martin v. Medtronic, Inc*., 63 F. Supp. 3d 1050, 1058 (D. Ariz. 2014) ("These claims are dismissed with prejudice. Plaintiffs are not given leave to amend because they have already had one opportunity to amend these claims and they still failed to state a plausible claim."); *accord Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (observing that a "district court's discretion to deny leave to amend is particularly broad" where "the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims" (quotation omitted)).

I. ALLEGATIONS AGAINST UNIDENTIFIED IBIDEN PRODUCTS

| Original Allegations | Grounds for Dismissal | New Allegations[2] |
|---|---|---|
| "Defendants have committed and continue to commit acts of infringement under 35 U.S.C. § 271 with . . . (ix) any Package Substrates manufactured by Ibiden for Intel or others (collectively referred to as the 'Accused Instrumentalities')." (Doc. 95 ¶ 103.) | **No facts regarding unspecified products:** "The amended complaint contains no facts about those unspecified products, and thus sets forth no plausible basis for infringement by them." (Doc. 112 at 11.) | ▮▮▮▮▮▮▮▮▮ (Doc. 124 ¶ 61.) "Defendants have committed and continue to commit acts of infringement under 35 U.S.C. § 271 with . . . ▮▮▮▮▮▮▮▮▮" (*Id.* ¶ 111.) |

In its prior pleadings, Continental Circuits sought to include within the scope of accused products "any Package Substrates manufactured by Ibiden for Intel or others."

---

[2] The differences between Continental Circuits' new allegations in its Second Amended Complaint and its original allegations in its Dismissed Complaint are shown in redline.

- 3 -

1  (Doc. 95 ¶ 103.) The Court dismissed such unidentified products made for unidentified
2  companies because "[t]he amended complaint contains no facts about those unspecified
3  products, and thus sets forth no plausible basis for infringement by them." (Doc. 112 at
4  11.)
5  Despite that clear ruling, however, Continental Circuits continues to accuse Ibiden
6  ███████████████████████████████████████████████████████ (Doc. 124 ¶ 61
7  (emphasis added); *see also id.* ¶ 111), without alleging sufficient facts to support an
8  infringement claim ██████████████████████████. Just like the Dismissed
9  Complaint, the Second Amended Complaint does not identify ████████████████
10 ██████████████████, or allege any facts suggesting how such unidentified
11 products meet any claim of any asserted patent. Instead, the Second Amended Complaint
12 simply states that ████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████
20 ████████████████████████ Those new allegations are legally insufficient for two reasons.[3]
21 ***First***, to the extent Continental Circuits seeks to accuse ████████████████
22 ██████████████████████████ Continental Circuits has failed to meet its burden to
23 plead facts suggesting that those processes infringe. As this and other Courts have held,
24 merely parroting selected words from some unidentified claim and averring that a process
25
---
26 [3] It is not clear whether Continental Circuits is relying on this allegation to accuse
27 ████████████████████████████████████████████████████████████████████. Under
28 any scenario, the allegations are insufficient.

1  infringes—without identifying any *facts* suggesting how or why the process infringes—is
2  insufficient to sustain an infringement claim under the Supreme Court's pleading
3  standards. (*See* Doc. 112 at 12-13 (ruling that "a 'product claim' of direct infringement
4  requires facts sufficient to 'plausibly allege that the accused product practices each of the
5  limitations' of an asserted claim, [and] a method claim requires 'pleading facts sufficient
6  to allow a reasonable inference that all steps of the claimed method are performed.'"
7  (citing *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016); *PageMelding, Inc. v.*
8  *ESPN, Inc.*, 2012 WL 1534844, at *2 (N.D. Cal. Apr. 30, 2012) ("Merely explaining how
9  plaintiff's patent works and stating that defendant produces a similar end product, is not
10 enough . . . . Plaintiff's pleading approach still smacks too much of 'shoot first and ask
11 questions later.'")).[4]

12   ***Second***, Continental Circuits does not allege ▓▓▓▓▓▓▓▓▓▓▓▓
13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓. Accordingly, to sustain an infringement claim based on Ibiden's
15 products, including under § 271(g), Continental Circuits must allege that some resulting
16 product was imported or sold into the United States. But the Second Amended
17 Complaint fails to identify *any* such product, sold to *any* customer, beyond the Ibiden
18 products incorporated into Intel products. Continental Circuits cannot circumvent the
19 territorial requirement of the patent code by vaguely accusing unidentified products for
20 unidentified customers and hoping that it later finds evidence of U.S. importation or sale.
21 *See LaserDynamics USA, LLC v. Cinram Grp., Inc.*, 2015 WL 6657258, at *3-4
22 (S.D.N.Y. Oct. 30, 2015) (dismissing infringement claims as to "unidentified products
23 and methods"); *Infineon Techs. AG v. Volterra Semiconductor Corp.*, 2012 WL 3939353,
24 at *3 (N.D. Cal. Sept. 10, 2012) (dismissing infringement claims against "unidentified

---

[4]   *See also Via Vadis, LLC v. Skype, Inc.*, 2012 WL 261367, at *2 (D. Del. Jan. 27, 2012) (dismissing direct infringement claim because "[t]here are simply no factual allegations advising Defendants how or why their products infringe on Plaintiff's patents").

1 'other products'" as failing to meet even the liberal pleading standard of Form 18). Rule
2 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than
3 conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## II. INDUCEMENT CLAIMS AGAINST INTEL

| Original Allegations | Grounds for Dismissal | New Allegations |
|---|---|---|
| "In the 1996 to 1998 timeframe, representatives of Continental Circuits Inc. held multiple meetings with representatives of Intel to discuss, *inter alia*, design rules and manufacturing reliability of printed circuit boards." (Doc. 95 ¶ 24.)<br><br>"In early 2005, a representative of Continental Circuits contacted Mr. David Simon, Chief Legal Counsel for Intel, informing Mr. Simon of the '870 patent, the '069 patent, and the continuation application that led to the issuance of the '582, '560, '105, and '912 patents, enclosing a copy of the patents and application, and expressing an interest in licensing of the portfolio to Intel." (*Id.* ¶ 34.)<br><br>"On March 2, 2005, Ms. Martha Peralez, Outside Submissions Coordinator for Intel, responded to the letter of Paragraph 34, stating that '[a]n Intel attorney is reviewing the matter.'" (*Id.* ¶ 36.)<br><br>"On April 21, 2005, Ms. Peralez sent an additional letter, stating that 'Intel has determined not to pursue this matter.'" (*Id.* ¶ 37.) | **No pre-suit knowledge:** "Plaintiff's allegations suggest that Intel had reason to know of the patent application, but nothing to show that Intel knew of the actual patents or that the technology had been invented by the patent applicants. And the Court cannot conclude that sophistication in patent matters provides the missing link." (Doc. 112 at 16-17.) | "Intel and the inventors of the Patents-in-Suit coordinated together on Continental Circuits Inc.'s Photolink, a product which came to embody the patented inventions." (Doc. 124 ¶ 25.)<br><br>"The specification of the '870 and '069 patents, as well as the continuation application that led to the issuance of the '582, '560, '105, and '912 patents, disclosed, for example, the use of non-homogenous materials to bring about an uneven chemical resistance, such that slowed or repeated etching would result in non-uniform roughness, a roughened undercutting structure comprising cavities which are obtuse so as to hook or angle under the exterior surface of the dielectric material, and tooth-shaped surface roughness sized at least 1 tenth of a mil deep, but less than 2 tenths of a mil deep." (*Id.* ¶ 37.)<br><br>"As of early 2005, Defendants were aware of the non-uniform roughening techniques and other patented features, such as those described in Paragraph 38 [sic], taught by the patent family and continuation patent |

- 6 -

| Original Allegations | Grounds for Dismissal | New Allegations |
|---|---|---|
| "The patents-in-suit have been publicly available from the United States Patent Office website since their respective dates of issuance." (*Id.* ¶ 38.)<br><br>"Defendants are familiar with the United States patent system, having filed for and been granted U.S. patents of their own." (*Id.* ¶ 39.)<br><br>"Defendants are familiar with the process of searching for an identifying issued U.S. patents." (*Id.* ¶ 40.) | | application and that representatives of Continental Circuits intended to continue prosecuting the continuation application that led to the issuance of the '582, '560, '105, and '918 patents." (*Id.* ¶ 43.)<br><br>"Having been made aware in early 2005 of the continuation application that led to the issuance of the '582, '560, '105, and '918 patents, Defendants deliberately took no steps to learn whether the continuation application led to issued patents." (*Id.* ¶ 44.)<br><br>"Defendants have at least been aware of the '582, '560, '105, and '918 patents since no later than July 15, 2016, the date by which Defendants were served with the initial complaint for patent infringement in this action." (*Id.* ¶ 47) |

In support of its inducement claim against Intel, Continental Circuits predicated its original theory of pre-suit knowledge on allegations that: (1) in the late 1990s, there were meetings between Intel and a prior entity associated with the patent applicants regarding circuit boards; (2) in 2005, a representative of Continental Circuits sent a letter to Intel regarding a pending patent application; and (3) Intel is sophisticated and familiar with the patent system. (*See* Doc. 95 ¶¶ 24, 34, 36-40.) Because inducement requires, among other things, a showing that the alleged inducer ***knew of the infringed patent*** and ***knowingly induced the infringing acts***, the Court found these allegations insufficient to plausibly suggest that Intel had pre-suit knowledge of the "actual patents or that the technology had been invented by the patent applicants." (Doc. 112 at 14, 16-17.)

1 In the Second Amended Complaint, Continental Circuits has added allegations that: (1) Intel "and the inventors of the Patents-in-Suit coordinated together on Continental Circuits Inc.'s Photolink, a product which came to embody the patented inventions" (Doc. 124 ¶ 25); and (2) "[a]s of early 2005, Defendants were aware of the non-uniform roughening techniques and other patented features[] . . . taught by the patent family and continuation patent application . . . " and "deliberately took no steps to learn whether the continuation application led to issued patents" (*id.* ¶¶ 43-44). These new allegations are insufficient to cure the deficiencies of the Dismissed Complaint.

***First***, no pleaded facts plausibly suggest that Intel learned about the asserted patents as part of any supposed "coordination" regarding Continental Circuits Inc.'s Photolink product. The Second Amended Complaint does not identify when that supposed "coordination" took place, what Intel purportedly did as part of that "coordination," or how those activities led Intel to receive pre-suit notice of the asserted patents. Further, although Continental Circuits alleges that Photolink "***came to embody*** the patented inventions" (emphasis added),[5] it does not identify ***when*** that supposedly happened or that Intel even knew when it purportedly did. Nor does it identify any specific asserted patent that Photolink purportedly embodied (notably, of the six patents identified in the Second Amended Complaint, two are not asserted). Accordingly, there is no reasonable basis to conclude Intel knew of the patents-in-suit (or that any technology had been patented) by way of any alleged "coordination" on the Photolink product.

***Second***, the allegations that Intel was aware of "non-uniform roughening techniques" and "deliberately took no steps to learn" whether they were patented are mere assertions not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678 ("The tenet that a court must accept as true all allegations contained in a complaint is inapplicable to

---

[5] The single sentence reference to the Photolink product does not provide any facts suggesting that Photolink embodied the "patented inventions"—it simply asserts that it did. (Doc. 124 ¶ 25.)

- 8 -

1 legal conclusions."). The Second Amended Complaint provides no additional *facts* from 2 which this Court can draw a reasonable inference that Intel had pre-suit notice of the 3 patents-in-suit—including no facts to suggest the deliberate steps that Intel supposedly 4 failed to take, or any other details about that supposed decision.

5       ***Third***, when stripped of rhetoric, all that remains in the Second Amended 6 Complaint is the *same* factual allegation found insufficient in the Dismissed Complaint: 7 i.e., "that Intel had reason to know of the patent application." (Doc. 112 at 16.) But as 8 this Court has recognized, alleged knowledge of related patents and a continuation 9 application, without more, does not support a reasonable inference that the asserted 10 patents were likely to issue, or that Intel could foresee the scope of later-issued claims. 11 *Id.* ("'[K]nowledge of the patent allegedly infringed simply cannot be inferred from mere 12 knowledge of *other* patents, even if somewhat similar.'"); *see State Indus., Inc. v. A.O.* 13 *Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("Filing an application is no guarantee 14 any patent will issue and a very substantial percentage of applications never result in 15 patents"; "what the scope of claims in patents that do issue will be is something totally 16 unforeseeable.").[6]

17       For that reason, this Court and other districts have routinely dismissed inducement 18 claims based on allegations that defendants merely knew of related patents and pending

---

[6] *See also LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*, 2012 WL 1965878, at *4 (N.D. Cal. May 30, 2012) ("District Courts have regularly required that plaintiffs plead knowledge of the actual patents at issue and not mere knowledge of the pendency of patent applications. This is because '[a] patent pending notice gives one no knowledge whatsoever . . . ." (citing *State Indus.*, 751 F.2d at 1236)); *see also* Doc. 52 at 14-15 (citing additional cases).

1  patent applications before the litigation.[7]  *See, e.g.*, *VIA Techs., Inc. v. ASUS Computer
2  Int'l*, 2015 WL 3809382, at *3 (N.D. Cal. June 18, 2015) ("The general rule in this
3  district is that knowledge of a patent application alone is insufficient to meet the
4  knowledge requirement for either a willful or induced infringement claim."); *McRee v.
5  Goldman*, 2012 WL 3745190, at *3 (N.D. Cal. Aug. 28, 2012) (dismissing inducement
6  claim with prejudice because "mere knowledge of a pending patent application . . . does
7  not give rise to liability for inducement"); *MONEC Holding AG v. Motorola Mobility,
8  Inc.*, 897 F. Supp. 2d 225, 233, 236 (D. Del. 2012) (dismissing indirect infringement
9  claims where plaintiff alleged pre-suit knowledge of one patent implied knowledge of the
10 patent's reexamined counterpart at issue in litigation).

11       The same result should apply here, even under Continental Circuits' attempt to
12 allege a new willful blindness theory based on pending patent applications.  "***[T]he law is
13 clear that knowledge of a patent application does not suffice to show willful blindness.***"
14 *Boundaries Solutions Inc. v. CoreLogic, Inc.*, 2014 WL 7463708, at *3 (N.D. Cal. Dec.
15 30, 2014) (emphasis added).  Moreover, because Intel had no duty to monitor the
16 continuation applications—as confirmed by Continental Circuits' failure to plead the
17 existence of any such duty—the allegation that Intel "took no steps" to learn about
18 subsequently issued patents does not support a reasonable inference that Intel deliberately
19 avoided knowledge of the asserted patents.  *See id.* ("***[T]his kind of affirmative duty to
20 sniff out a potential patent is far beyond any duty recognized by the Federal Circuit . . .
21 or any other court***." (emphasis added)).

---

[7]     As noted in Intel's first motion to dismiss, post-filing knowledge of the asserted patents is not sufficient to plead the requisite state of mind for inducement. (Doc. 52 at 14-15.)  Accordingly, Continental Circuits' inducement claim should be dismissed in full. *See, e.g.*, *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010) ("[K]nowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement."); *Proxyconn Inc. v. Microsoft Corp.*, 2012 WL 1835680, at *6-7 (C.D. Cal. May 16, 2012) (dismissing induced infringement claims with prejudice and quoting *Xpoint*) (citing additional cases).

### III. WILLFULNESS CLAIMS AGAINST INTEL AND IBIDEN

| Original Allegations | Grounds for Dismissal | New Allegations |
|---|---|---|
| **As to Intel** | | |
| *See* disclosures above with regard to knowledge for inducement claim. | **No pre-suit knowledge:** "Knowledge remains a key factor in determining willfulness. For this reason, Plaintiff's failure to plead sufficient facts to show Intel's knowledge of the patents is fatal to its willfulness claim." (Doc. 112 at 19 (citations omitted).) | *See* disclosures above with regard to knowledge for inducement claim. |

| Original Allegations | Grounds for Dismissal | New Allegations |
|---|---|---|
| **As to Ibiden** | | |
| "Jeff Long, a sales representative at Continental Circuits Inc. in the mid-1990s, learned of the technology covered by the patents-in-suit during his tenure working with the company." (Doc. 95 ¶ 29.)<br><br>"Unbeknownst to Continental Circuits Inc., in approximately 1997, Mr. Long entered into a business arrangement with Ibiden while still employed by Continental Circuits Inc." (*Id.* ¶ 30.)<br><br>"Without permission from Continental Circuits Inc., Mr. Long shared the technology described in the patents-in-suit with Ibiden and began directing business away from Continental Circuits Inc. to Ibiden." (*Id.* ¶ 32.)<br><br>"In early 2005, a representative of | **No egregiousness:** "Plaintiff has alleged sufficient facts to show knowledge, but not to show the additional element of egregiousness. Ibiden's motion to dismiss as to willfulness will be granted." (Doc. 112 at 20.) | "<u>With knowledge of the patented non-uniform roughening techniques and features, and the pending patent application which led to the '582, '560, '105, and '918 patents, Ibiden nevertheless proceeded to meet Intel's specification requirements using the patented technology.</u>" (Doc. 124 ¶ 46.)<br><br>"Ibiden's infringement of the ~~patents in suit~~<u>Patents-in-Suit</u> has been and continues to be <u>egregious,</u> willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, and/or flagrant." (*Id.* ¶ 166.) |

- 11 -

| Original Allegations | Grounds for Dismissal | New Allegations |
|---|---|---|
| Continental Circuits contacted Mr. Asusushi Uchida, General Counsel for Ibiden Circuits of America, informing Mr. Uchida of the '870 patent, the '069 patent, and the continuation application that led to the issuance of the '582, '560, '105, and '912 patents, enclosing a copy of the patents and application, and expressing an interest in licensing of the portfolio to Ibiden." (*Id.* ¶ 35.) "In 2014, a conversation took place between a representative of Continental Circuits and a business development manager at Ibiden. In that conversation, it was confirmed that the technology claimed in the patents-in-suit is still in use at Ibiden today. When questioned further about specific processes claimed in the patents-in-suit, the Ibiden manager became evasive and ended the discussion." (*Id.* ¶ 41.) | | |

As this Court previously observed, willfulness requires a showing that the alleged infringer (1) knew of the patent, and (2) acted egregiously beyond typical infringement. (Doc. 112 at 19 (noting, "[a]fter *Halo*, egregiousness is the touchstone of the willfulness inquiry," and pre-suit knowledge "remains a key factor in determining willfulness").)

The Court dismissed the original willfulness claim against Intel because Continental Circuits failed to allege sufficient facts suggesting that Intel had pre-suit knowledge of the asserted patents. (*Id.* ("Plaintiff's failure to plead sufficient facts to

1 show Intel's knowledge of the patents is fatal to its willfulness claim.").)  And the Court
2 dismissed the willfulness claim as to Ibiden because Continental Circuits failed to allege
3 sufficient facts suggesting that Ibiden's conduct was egregious beyond typical
4 infringement.  (*Id*. at 20.)

5 In its new complaint, for Intel, Continental Circuits adds the allegations discussed
6 in Section II above regarding pre-suit knowledge and an allegation that ▮▮▮▮
7 ▮▮▮▮
8 ▮▮▮▮
9 ▮▮▮▮
10 ▮▮▮▮ (Doc. 124 ¶ 45; *id.* ¶¶ 53-54.)
11 For Ibiden, the Second Amended Complaint states that Ibiden was "egregious" ▮▮▮
12 ▮▮▮▮, despite "knowledge of the patented non-uniform
13 roughening techniques and features, and the pending patent application which led to the
14 [patents-in-suit]."  (*Id.* ¶¶ 46, 166.)

15 These new allegations fail to cure the deficiencies of the Dismissed Complaint.
16 No pleaded facts support pre-suit knowledge by Intel, and no pleaded facts suggest that
17 either Intel or Ibiden's conduct has been remotely close to "egregious."

18 ***First***, for the same reasons discussed *supra* at Section II, the allegations of pre-suit
19 knowledge by Intel are insufficient.  Because "[k]nowlege remains a key factor in
20 determining willfulness," that deficiency is fatal to the amended claim of willfulness
21 against Intel, just as it was to the prior claim. (Doc. 112 at 19.)

22 ***Second***, the new allegations ▮▮▮▮
23 ▮▮▮▮, fall far short of
24 the "egregious" conduct required under *Halo*.  *See Jenkins v. LogicMark, LLC*, 2017 WL
25 376154, at *5 (E.D. Va. Jan. 25, 2017) (explaining such conduct requires factual
26 allegations "characteristic of a pirate"). ▮▮▮▮
27 ▮▮▮▮
28 ▮▮▮▮ "merely

- 13 -

asserting that [Ibiden] knew about the patent and continued its allegedly infringing activity is not enough to constitute willful infringement." *CG Tech. Dev., LLC v. Zynga, Inc.*, 2017 WL 662489, at *4 (D. Nev. Feb. 17, 2017); *see also Jenkins*, 2017 WL 376154, at *5 ("At no point in the Complaint does Jenkins allege facts from which the Court could infer that . . . Defendant's actions were willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, [or] flagrant." (citation omitted)). The amended claim of willful infringement against Ibiden should therefore be dismissed.

## IV.  CONCLUSION

Continental Circuits' Second Amended Complaint confirms that, even nine months into this case, it still has no factual basis for its assertions that unidentified Ibiden products or processes infringe the asserted patents; that Intel had knowledge sufficient to induce infringement; or that Intel or Ibiden has engaged in the type of egregious conduct required for willful patent infringement. After repeated failed attempts to plead these claims, Intel and Ibiden respectfully request their ***dismissal with prejudice***.

DATED:  March 31, 2017

Respectfully submitted,

By*:      /s/  Joseph J. Mueller*

Chad S. Campbell (State Bar No. 012080)
CSCampbell@perkinscoie.com
PERKINS COIE LLP
2901 N. Central Avenue
Suite 2000
Phoenix, AZ 85012
Tel: (602) 351-8000 / Fax: (602) 648-7000

William F. Lee (*admitted pro hac vice*)
William.Lee@wilmerhale.com
Joseph J. Mueller (*admitted pro hac vice*)
Joseph.Mueller@wilmerhale.com
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000 / Fax: (617) 526-5000

| | |
|---|---|
| 1 | |
| 2 | Nina S. Tallon (*admitted pro hac vice*) |
|   | Nina.Tallon@wilmerhale.com |
| 3 | WILMER CUTLER PICKERING HALE |
|   |   AND DORR LLP |
| 4 | 1875 Pennsylvania Avenue, NW |
|   | Washington, DC 20006 |
| 5 | Tel: (202) 663-6000 / Fax: (202) 663-6363 |
| 6 | ***Attorneys for Defendants Intel*** |
| 7 | ***Corporation, Ibiden U.S.A. Corporation,*** |
|   | ***and Ibiden Co. Ltd.*** |

**CERTIFICATE OF SERVICE**

I certify that on the 31st day of March, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants of record in this matter.

I certify that on April 3, 2017, I will serve the attached document by first class mail on Judge Campbell, United States District Court of Arizona, 401 West Washington Street, Phoenix, Arizona 85003-2118.

*/s/ Sharon Neilson*