**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Continental Circuits LLC,<br>Plaintiff,<br>v.<br>Intel Corporation, et al.,<br>Defendants. | No. CV16-2026 PHX DGC<br>**ORDER** |

Defendants Ibiden U.S.A. Corp. and Ibiden Co. Ltd. (collectively, "Ibiden") and Intel Corp. jointly move to dismiss Plaintiff Continental Circuits LLC's second amended complaint (Docs. 128 (sealed version), 133 (redacted version)) under Federal Rule of Civil Procedure 12(b)(6). Docs. 142 (redacted version), 147 (sealed version).[1] The motion has been fully briefed. Docs. 142, 155, 175. For the reasons that follow, Defendants' motion to dismiss will be granted in part and denied in part.

## I. Background.

For the second time, Defendants move to dismiss Plaintiff's complaint on the basis of factual insufficiency. Because the Court recounted the facts and procedural history of

---

[1] The second amended complaint and the papers related to this motion have been filed under seal. Where possible, the Court has cited the non-redacted, publicly-available versions of these documents. In the public version of this order, sealed information has been redacted.

this case in detail in its previous order granting Defendants' first motion to dismiss in part (Doc. 112), only a brief review is needed here.

Defendant Ibiden produces package substrates [redacted]. *See* Doc. 133, ¶¶ 51, 110, 154; Doc. 147, at 9.[2] These substrates are used in computer electronics, including computer processors manufactured by Defendant Intel. *See* Doc. 133, ¶¶ 49-51. The two companies worked together to develop the specifications that Intel expects Ibiden's substrates to meet. *Id.*, ¶¶ 52, 55-56.

Computer circuit boards like those in Intel's products are made of alternating layers of conductive and non-conductive materials. *See id.*, ¶ 29. When adhesion between the layers is poor, they can separate. *See id.* In the 1990s, four employees of Continental Circuits, Inc., a now-defunct circuit-board manufacturer, invented a "novel surface roughening technique" using etching to create a "non-uniformly roughened surface" that allows for stronger adhesion between layers. *Id.*, ¶¶ 28-29, 120. The four co-inventors applied to patent the surface-roughening technology in 1997, and two patents were issued in 2000 and 2004, respectively. Doc. 52, at 6; *see also* Doc. 133, ¶¶ 12-13. Those patents are not at issue in this case. A continuation application was filed by early 2005, and eventually resulted in issuance of the four patents that are at issue in this action: U.S. Patent Nos. 7,501,582 (2009), 8,278,560 (2012), 8,581,105 (2013), and 9,374,912 (2016) (collectively, the "patents-in-suit"). *See* Doc. 133, ¶¶ 14-17, 35-36.

Plaintiff Continental Circuits LLC is a non-operating entity that was formed in 2016 and owns the patents-in-suit.[3] Doc. 49, at 11 n.8; Doc. 133, ¶ 19. The day after the last of the patents-in-suit was issued, Plaintiff initiated this action. *See* Doc. 1. The original and first amended complaints alleged that both Defendants infringed the patents-in-suit directly, indirectly, and willfully. Doc. 95, ¶¶ 120-55.

---

[2] Page citations are to the numbers placed at the top of each page by the Court's CM/ECF system rather than the documents' original page numbers.

[3] Continental Circuits Inc. changed its name in 1997 and dissolved in 2013. Doc. 49, at 11 n.8; Doc. 52, at 6 n.2.

Plaintiff claims that a former employee of Continental Circuits "shared the technology described in the patents-in-suit with Ibiden" in 1997, as Ibiden's "supplier relationship with Intel" was growing. *Id.*, ¶¶ 29-33. According to Plaintiff, Ibiden and Intel "collaborate[d] . . . to develop specifications for the design of packaging to ultimately be used in Intel products." *Id.*, ¶ 45. As a result, certain Intel product lines came to "meet or embody the limitations of at least one claim" of each of the patents-in-suit, as did "any Package Substrates manufactured by Ibiden for Intel or others." *Id.*, ¶¶ 51-100, 103.

Plaintiff alleges that both Defendants learned of the pending continuation application that eventually became the patents-in-suit through a 2005 letter from a "representative of Continental Circuits" to the heads of their respective legal departments. *See id.*, ¶¶ 34-37. Plaintiff further asserts that a "representative of Continental Circuits . . . confirmed" in a 2014 conversation with an Ibiden manager "that the technology claimed in the patents-in-suit is still in use." *Id.*, ¶ 41.

On February 21, 2017, this Court granted in part and denied in part motions to dismiss filed by Defendants. Doc. 112, at 20. In the ensuing months, discovery has continued and Plaintiff has amended its complaint a second time. Docs. 128, 133. Defendants now jointly move to dismiss the second amended complaint in part, arguing that Plaintiff "has still failed to come forward with plausible allegations" to support a number of its claims. Doc. 142, at 6.

## II. Legal Standard.

The Court will not grant a motion to dismiss under Rule 12(b)(6) unless the complaint either lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). If a complaint sets forth a cognizable legal theory, it will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the

complaint's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**III. Discussion.**

In its previous order, the Court dismissed the first amended complaint's direct infringement claims as to Intel's Itanium series processors, chipsets, and wireless network adapters after concluding that Plaintiff had not provided enough facts to make them plausible. Doc. 112, at 10, 20. Plaintiff's second amended complaint no longer advances claims against Intel's wireless network adapters, and Defendants are not seeking dismissal of the newly-pled direct infringement claims against Intel's Itanium processors and chipsets. Doc. 142, at 5 n.1.

Defendants move to dismiss Plaintiff's direct infringement claims against Ibiden as to unnamed products sold to customers other than Intel. The Court previously dismissed these claims, and will do so again.

**A. Direct Infringement Claims against Unidentified Ibiden Products.**

**1. Section 271(a) Claims.**

A direct infringer under 35 U.S.C. § 271(a) "makes, uses, offers to sell, or sells any patented invention[] within the United States or imports into the United States any patented invention during the term of the patent." In its previous order, the Court made clear that the *Twombly/Iqbal* pleading standard, which requires "enough facts to make [Plaintiff's claims] plausible," applies to direct infringement claims. Doc. 112, at 7, 10. Plaintiff's first amended complaint alleged infringement by Ibiden products manufactured for unspecified companies other than Intel. *See, e.g.*, Doc. 95, ¶¶ 103 (alleging infringement by "any Package Substrates manufactured by Ibiden for Intel or others"), 147 (alleging Ibiden induced infringement by "Intel and other companies supplied by Ibiden"). The Court dismissed these claims because Plaintiff provided "no

facts about those unspecified products, and thus set[] forth no plausible basis for infringement by them." Doc. 112, at 11.

In the second amended complaint, Plaintiff redefines these unnamed products as [redacted] Doc. 128, ¶¶ 61, 104. Rather than adding facts about the products themselves, Plaintiff has added facts, learned in the course of discovery, about [redacted] Doc. 128, ¶¶ 58-61 (footnote omitted).

Plaintiff argues that these additional facts satisfy the "purpose of pleading standards" – to give Defendants "fair notice" of the claims so they can "defend [themselves] effectively." Doc. 175, at 6 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). But Plaintiff candidly acknowledges that it has not identified the allegedly infringing products or the specific facts that show they infringe. *See* Doc. 170, at 6-8; Doc. 175, at 6-8. Plaintiff attempts to excuse this failure by asserting that Ibiden knows which products [redacted], so Ibiden can identify the infringing products. Plaintiff states: "While Continental Circuits and the Court may not yet be able to identify those products, Ibiden can." Doc. 175, at 8.

This argument misunderstands modern pleading requirements. As the Supreme Court explained: "A claim has facial plausibility when the plaintiff pleads factual content that allows *the court* to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Plaintiff provides no facts that enable the Court to draw the reasonable inference that Ibiden produces infringing products for other customers. Indeed, it is apparent from the second amended complaint that Plaintiff does not even know if such products exist. Doc. 155, at 5 n.2. Plaintiff alleges the mere possibility of such infringement, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff alleges that the unnamed products are [REDACTED] as the Intel products identified in the second amended complaint, but Plaintiff does not allege facts showing that [REDACTED] yields products with the same allegedly-infringing features as the named products. Absent such facts, Plaintiff is left in the same position as before: the second amended complaint, like the first, "contains no facts about those unspecified products." Doc. 112, at 11. As Defendants point out, "[t]here are no images of substrates of non-Intel products, nor any allegations of common materials, specifications, or parameters" between the named and unnamed products. Doc. 155, at 5-6.

"[M]ost courts have, in the wake of *Twombly* and *Iqbal*, required some level of specificity regarding the accused product . . . . Indeed, many courts have even required an exact identification." *FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-1058, 2016 WL 903681, at *4 (S.D. Cal. Feb. 8, 2016) (quoting *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. 10-4458, 2011 WL 4079231, at *4 (N.D. Cal. Sept. 12, 2011) (rejecting "generic descriptions" such as "computer chips, motherboards, computers")). The general consensus in this Circuit is that "the accused products must be identified with 'at least minimal specificity.'" *Anza Tech., Inc. v. Novatel Wireless, Inc.*,

No. 16-585, 2016 WL 7555397, at *3 (S.D. Cal. Nov. 4, 2016) (quoting *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. 11-4049, 2012 WL 1030031, at *2 (N.D. Cal. Mar. 22, 2016)).[4]

Plaintiff contends that it need only "notif[y] Ibiden that it is also accusing of infringement any other package substrates that are not more than colorably different than the specifically named Intel products, regardless of [the] particular customer." Doc. 175, at 6. In addition to the requirement that Plaintiff plead facts from which the Court can reasonably infer infringement, something the "colorable differences" allegation does not do, the "colorable differences" standard can be found in two areas of patent law, contempt and preclusion, both of which presuppose an existing judgment of infringement. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881-82 (Fed. Cir. 2011) (contempt for violation of injunction); *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1296-98 (Fed. Cir. 2001) (claim preclusion issue). The Court declines Plaintiff's invitation to adopt the "colorable differences" standard as a substitute for the minimal level of fact pleading required by *Twombly* and *Iqbal*. Plaintiff's allegations would fail under its own standard in any event – the second amended complaint contains no facts to show how and why the named and unnamed products are similar.[5] The second amended complaint's

---

[4] *Compare Glob. Tech Led, LLC v. Every Watt Matters, LLC*, No. 15-61933, 2016 U.S. Dist. LEXIS 183122, at *12-14 (S.D. Fla. July 29, 2016) (denying motion to dismiss where products were identified as "LED Retrofit Kits or LED Retro Kits," but not identified by product number), *with LaserDynamics USA, LLC v. Cinram Grp., Inc.*, No. 15-1629, 2015 WL 6657258, at *4 (S.D.N.Y. Oct. 30, 2015) (although "[a] patent allegation that pleads 'a specific product that allegedly infringes [an identified] patent by virtue of certain specific characteristics' is sufficient to meet the *Twombly* standard," the complaint's "'at least' and 'infringing methods' language fail[ed] to plead a plausible claim for infringement as to the universe of unidentified products and methods" (second alteration in original) (citation omitted)), *Infineon Techs. AG v. Volterra Semiconductor Corp.*, No. 11-6239, 2012 WL 3939353, at *3 (N.D. Cal. Sept. 10, 2012) (granting motion to dismiss "to the extent said [direct infringement] counts are based on references to 'other products'"), *and Round Rock Research, LLC v. Oracle Corp.*, No. 11-332, 2011 WL 11761563, at *3 (E.D. Tex. Oct. 25, 2011) (unlike allegations as to two named technologies, "the language 'including, but not limited to,' fail[ed] to inform Defendants of other products that might be accused of infringement"), *report and recommendation adopted*, 2011 WL 5837246 (E.D. Tex. Nov. 21, 2011).

[5] An allegation that the products are similar without specific facts to make the comparison concrete is insufficient. *See* Doc. 112, at 10 (rejecting as impermissibly conclusory Plaintiff's allegations in the first amended complaint that cross-section images

§ 271(a) direct infringement allegations as to unnamed Ibiden products made for unidentified non-Intel customers will be dismissed.

**2. Section 271(g) Claims.**

In addition to its product claims, Plaintiff also raised method claims of direct infringement against Ibiden under 35 U.S.C. § 271(a) and (g) in its first amended complaint. Doc. 95, ¶¶ 115-17, 123-26, 142-45. This Court dismissed the § 271(a) method claims but did not address the § 271(g) claims, which Defendants elected not to challenge at that time.[6] Doc. 110, at 16:13-19; Doc. 112, at 11-13. Defendants now move to dismiss the § 271(g) method claims in the second amended complaint that pertain to "unidentified products for unidentified customers." Doc. 142, at 9; *see Gundy v. Cal. Dep't of Corr. & Rehab.*, No. 12-1020, 2013 U.S. Dist. LEXIS 18185, at *15-16 (E.D. Cal. Feb. 8, 2013) (because an amended complaint supersedes its predecessors, the moving party may in a subsequent motion to dismiss "raise new arguments that were previously available").

Section 271(g) provides that "[w]hoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent." Defendants argue that Plaintiff "must allege that some . . . product [resulting from a patented process] was imported or sold into the United States," and yet Plaintiff has not "identif[ied] any such product, sold to any customer, beyond the Ibiden products incorporated into Intel products." Doc. 142, at 9.

---

of six of the product lines were "representative" of the other three, and that there was "no material difference in the substrate layers between any versions of the Accused Instrumentalities" (quoting Doc. 95, ¶¶ 108-09)). The allegations of the second amended complaint do not even get that far – they claim [redacted], not the *products*, are "not colorably different" from one another. Doc. 128, ¶¶ 59 n.1, 61, 111.

[6] Plaintiff has not renewed its § 271(a) method claims. Doc. 142, at 5 n.1. Also not at issue here are Plaintiff's § 271(g) claims against Intel (Doc. 133, ¶¶ 140-41).

"Liability under § 271(g) is subject to the same pleading standard as direct infringement under § 271(a)." *Anza Tech., Inc. v. D-Link Sys., Inc.*, No. 16-1263, 2016 WL 8732647, at *4 (S.D. Cal. Nov. 4, 2016). As with the allegations under § 271(a), the second amended complaint does not plead facts from which the Court reasonably can infer that Ibiden has made infringing products by use of a patented process and shipped them into the United States. The complaint does not identify any such products.

Courts have recognized that, in a § 271(g) claim, "the accused products must be identified with 'at least minimal specificity' so as to adequately put the defendant on notice of the claims against it and the grounds upon which those claims rest." *Id.* (collecting cases). In *D-Link*, the defendant moved to dismiss the plaintiff's § 271(g) claims, arguing that the complaint "fail[ed] to identify even one specific product allegedly imported by Defendant into the United States that has been made using the allegedly infringing method." *Id.* The plaintiff responded that the complaint contained enough detail to put the defendant on notice, i.e., "an identifiable category of ['electronics hardware'] products" and the "specific method alleged to infringe – the flip chip bonding process." *Id.* The court disagreed, holding that the plaintiff "fail[ed] to sufficiently identify the Accused Products." *Id.*, at *5. Relevant here, the complaint "fail[ed] to provide sufficient factual information to allow Defendant to identify the specific chips made by the infringing process." *Id.* In holding that "[s]uch broad allegations fail to give Defendant notice of what *specific products or aspects of its products* allegedly infringe," the court emphasized the importance of identifying the accused product; a brief description of the process used to make it is not enough.[7] *Id.*

---

[7] Unlike the plaintiffs in *D-Link* and *LaserDynamics*, Plaintiff here does not expressly allege that the process underlying its § 271(g) claim infringed its patents. *See* Doc. 128, ¶¶ 58-61, 111. A claim that a process [redacted] infringes a patent requires enough facts to "allow a reasonable inference that all steps of the claimed method are performed." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016). The description [redacted] – does not do so. Absent facts alleging infringement, Plaintiff is left with nothing more than the clearly

(emphasis added). *Compare* Doc. 128, ¶ [redacted].

The court in *D-Link* rejected the same argument Plaintiff makes here: that "Defendant, rather than Plaintiff, knows precisely" the products "that are implicated." 2016 WL 8732647, at *5 (internal quotation marks and citation omitted). The plaintiff "simply fail[ed] to satisfy [the *Twombly/Iqbal*] standard" requiring that the accused products be identified with "some level of specificity," and was not permitted to "use the discovery process to narrow its infringement contentions." *Id.* (quoting *Footbalance*, 2016 WL 903681, at *4); *see also Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Because the obligation rests on Plaintiff to plead its claims with the requisite specificity, and Plaintiff has not done so, the § 271(g) claims as to unidentified products sold to customers other than Intel will be dismissed.

**B. Induced Infringement Claims against Intel.**

Plaintiff's first amended complaint raised claims of indirect infringement, both induced and contributory, against both Defendants.[8] Doc. 95, ¶¶ 128, 132, 147, 151. Because direct infringement is a necessary condition of both induced and contributory infringement, *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986), the Court's previous order dismissed all of the indirect infringement claims that depended on a finding of direct infringement. Doc. 112, at 13. Any indirect infringement claims related to the unnamed Ibiden products intended for customers other than Intel will be dismissed on the same ground.

---

insufficient allegation that the products accused under § 271(g) are "made by a process claimed in the Patents-in-Suit." Doc. 133, ¶ 156.

[8] The Court in its previous order found Plaintiff's contributory infringement allegations to be sufficient as to Ibiden but insufficient as to Intel. Doc. 112, at 18. The second amended complaint does not include contributory infringement claims against Intel.

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Inducement has three elements: (1) knowledge of the patent, (2) knowing inducement of the infringing acts, and (3) specific intent to encourage another to infringe the patent. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006) (en banc). Plaintiff's inducement claims against Ibiden survived Defendants' first set of motions to dismiss. Doc. 112, at 15-16. As to Intel, however, the Court found that meetings between Intel and Continental Circuits in the late 1990s regarding circuit-board design and manufacture, correspondence between an Intel employee and a Continental Circuits representative in early 2005 about the continuation application, and Intel's general sophistication regarding the patent system were not sufficient to show knowledge of the patents-in-suit. *Id.*, at 16-17. The Court noted that this was a close question. *Id.*, at 16.

The second amended complaint includes the following allegations regarding Intel's knowledge of the patents-in-suit:

> 23. Continental Circuits Inc. manufactured printed circuit boards for large companies such as Intel, Motorola, and others.
>
> 24. In the 1996 to 1998 timeframe, representatives from Continental Circuits Inc. held multiple meetings with representatives of Intel to discuss, inter alia, design rules and manufacturing reliability of printed circuit boards.
>
> 25. Intel and the inventors of the Patents-in-Suit coordinated together on Continental Circuits Inc.'s Photolink, a product which came to embody the patented inventions.
>
> 26. Continental Circuits Inc.'s products were widely distributed in the printed circuit board market.
>
> * * *
>
> 30. Jeff Long, a sales representative at Continental Circuits Inc. in the mid-1990s, learned of the technology covered by the Patents-in-Suit during his tenure working with the company.

31. Unbeknownst to Continental Circuits Inc., in approximately 1997, Mr. Long entered into a business arrangement with Ibiden while still employed by Continental Circuits Inc.

* * *

33. Without permission from Continental Circuits Inc., Mr. Long shared the technology described in the Patents-in-Suit with Ibiden and began directing business away from Continental Circuits Inc. to Ibiden.

34. Ibiden's supplier relationship with Intel grew significantly in the late 1990s.

35. In early 2005, a representative of Continental Circuits contacted Mr. David Simon, Chief Legal Counsel for Intel, informing Mr. Simon of the '870 patent, the '069 patent, and the continuation application that led to the issuance of the '582, '560, '105, and '912 patents, enclosing a copy of the patents and application, and expressing an interest in licensing of the portfolio to Intel.

* * *

38. On March 2, 2005, Ms. Martha Peralez, Outside Submissions Coordinator for Intel, responded to the letter of Paragraph 35, stating that "[a]n Intel attorney is reviewing the matter."

39. On April 21, 2005, Ms. Peralez sent an additional letter, stating that "Intel has determined not to pursue this matter."

40. The Patents-in-Suit have been publicly available from the United States Patent Office website since their respective dates of issuance.

41. Defendants are familiar with the United States patent system, having filed for and been granted U.S. patents of their own.

42. Defendants are familiar with the process of searching for and identifying issued U.S. patents.

43. As of early 2005, Defendants were aware of the non-uniform roughening techniques and other patented features, such as those described in Paragraph 38, taught by the patent family and continuation patent application and that representatives of Continental Circuits intended to continue prosecuting the continuation application that led to the issuance of the '582, '560, '105, and '918 patents.

> 44. Having been made aware in early 2005 of the continuation application that led to the issuance of the '582, '560, '105, and '918 patents, Defendants deliberately took no steps to learn whether the continuation application led to issued patents.
>
> 45. [redacted]

Docs. 128, 133.

The Court admits that it views the sufficiency of these allegations as a very close question. On one hand, the allegations clearly suggest that Intel knew of Continental Circuits' technology. This can be inferred reasonably from Intel's multiple meetings with Continental Circuits personnel in 1996-1998 regarding circuit board design and reliability, Intel's coordination with Continental Circuits on the Photolink product that came to embody the technology, and Intel's growing relationship with Ibiden in the late 1990s – after Ibiden acquired the technology from Jeff Long. The Court is less certain, however, that Plaintiff's allegations plausibly show that Intel knew the technology was covered by the patents-in-suit – the key knowledge required for inducement. To support such knowledge, Plaintiff alleges that the 2005 communication alerted Intel to the fact that Continental Circuits had patented and was seeking to further patent the technology, that Intel fully understood this business and the nature of the relevant patents, that Intel had the capacity to learn of the patents once they were issued, and that Intel worked closely with Ibiden on the allegedly infringing make-up of its own products, [redacted]. While none of these facts actually shows knowledge, they certainly suggest that Intel was embracing technology it learned of from Continental Circuits, and at a time when it knew Continental Circuits was seeking to patent the technology. Because knowledge can be shown by circumstantial evidence, *Simplivity Corp. v. Springpath, Inc.*, No. 15-13345, 2016 WL 5388951, at *10 (D. Mass. July 15, 2016), and Plaintiff's allegations need not

make knowledge probable, only plausible, *Iqbal*, 556 U.S. at 678, the Court concludes, for purposes of this motion to dismiss, that Plaintiff has plausibly pled knowledge.

In light of this conclusion, the Court need not address the parties' arguments regarding willful blindness and post-suit knowledge.[9]

Because the allegations in the second amended complaint support a reasonable inference that Intel had pre-suit knowledge of the patents-in-suit, the allegations also support a reasonable inference of intent to encourage Ibiden to infringe. Accordingly, Defendant's motion to dismiss Plaintiff's claims of induced infringement against Intel will be denied.

**C. Willfulness.**

Defendants move to dismiss Plaintiff's willfulness claims on the grounds that the Supreme Court's recent decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), requires facts showing egregiousness, and Plaintiff has not pled such facts. Doc. 142 at 17. Plaintiff responds that it is not required to plead egregiousness at all. Plaintiff argues that "first, willfulness is determined, *and then*, egregiousness is analyzed to determine *how much* to enhance damages." Doc. 175 at 15.

Since *Halo* abrogated the "objective recklessness" standard, the law concerning willfulness has been in a state of flux, and *Halo*'s "effect on the pleading standard for willful infringement remains unclear." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-885, 2017 WL 74729, at *5-6 (S.D.N.Y. Jan. 4, 2017). Courts (including this one in its previous order) have universally – either in word or deed – required plaintiffs to plead facts showing willfulness. *See, e.g.*, *Finjan, Inc. v. Cisco Sys.*, No. 17-72, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (dismissing willfulness claims because, even if plaintiff had established knowledge, the amended complaint "d[id] not contain sufficient factual allegations to make it plausible that [defendant]

---

[9] The Court notes that a majority of cases have held that an inducement claim may survive where the defendant first learns about the patents through the complaint, but the plaintiff's damages will be limited accordingly. *See Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1116 (N.D. Cal. 2016) (collecting cases).

engaged in 'egregious' conduct that would warrant enhanced damages under *Halo*"); *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-6795, 2017 WL 2311407, at *5 (N.D. Cal. May 26, 2017) (granting motion to dismiss where plaintiff "ma[de] no factual allegations regarding [defendant]'s knowledge or intent to infringe"); *Bio-Rad Labs. Inc. v. Thermo Fisher Sci. Inc.*, No. 16-358, --- F. Supp. 3d ----, 2017 WL 438733, at *1-2 (D. Del. Feb. 1, 2017) (finding "alleged facts" sufficient and denying motion to dismiss); *CG Tech. Dev., LLC v. FanDuel, Inc.*, No. 16-801, 2017 WL 58572, at *6 (D. Nev. Jan. 4, 2017) (dismissing where "Plaintiffs have not sufficiently alleged willful infringement"); *Bobcar Media*, 2017 WL 74729, at *6 (denying motion to dismiss where the "allegations plausibly suggest that [defendant]'s actions were subjectively willfull [sic]"); *Nanosys*, 2016 WL 4943006, at *8 (dismissing willfulness claims without prejudice, but warning that plaintiff's amended complaint must "allege additional facts upon which they can bolster allegations showing willfulness"). In *Novitaz*, the court rejected the argument Plaintiff makes here – that it "is not required to plead willfulness," which is simply "a factor that the Court may consider in determining whether or not to enhance damages." 2017 WL 2311407, at *5 (quoting Opp'n, at 1 n.2). The court explained that "willfulness . . . is still a factual determination that a court must make, and district courts have continued, post-*Halo*, to treat it as a separate claim that can be subject to a motion to dismiss." *Id.* (citing, inter alia, Doc. 112).

More uncertain is the quantum of culpability that a plaintiff must plead. Several courts have required facts showing "egregious" conduct. *See, e.g.*, *Finjan*, 2017 WL 2462423, at *5; *FanDuel*, 2017 WL 58572, at *6; *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 16-857, 2016 WL 4521682, at *14 (D. Nev. Aug. 29, 2016); *Varian Med. Sys., Inc. v. Elekta AB*, No. 15-871, 2016 WL 3748772, at *8 (D. Del. July 12, 2016). Others have expressly declined to require such facts. *See Bobcar Media*, 2017 WL 74729, at *6 (allegations showing defendant's conduct was "subjectively willfull [sic]" are "enough under *Halo*"). Some require "allegations showing willfulness beyond a claim of mere knowledge." *See Nanosys*, 2016 WL 4943006, at *8. Other courts have

suggested that knowledge *can* suffice, at least under some circumstances. *See Bio-Rad*, 2017 WL 438733, at *2 (willfulness sufficiently alleged where "it is plausible that [defendant] intentionally *or knowingly* infringed the patent-in-suit" (emphasis added)); *Glob. Tech Led, LLC v. Every Watt Matters, LLC*, No. 15-61933, 2016 U.S. Dist. LEXIS 183122, at *14-17 (S.D. Fla. July 29, 2016) ("[A]n infringer's intent or knowledge of the infringement may warrant punitive damages depending on 'the particular circumstances of each case.'" (quoting *Halo*, 136 S. Ct. at 1933)).[10]

The Court continues to conclude that willfulness must be pled, and that allegations of knowledge alone are insufficient. *See Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring) ("[T]he Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*."). "It is 'circumstanc[e]' that transforms simple knowledge into such egregious behavior, and that makes all the difference." *Id.* (alteration in original) (quoting majority opinion). Plaintiff has pled no facts to suggest such circumstances here. The second amended complaint adds the word "egregious" to its allegations that Defendants' "infringement of the Patents-in-Suit has been and continues to be *egregious*, willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, and/or flagrant" (Doc. 133, ¶¶ 148, 166 (emphasis added)), but this is merely a conclusion, which is not sufficient. *Iqbal*, 556 U.S. at 678-79.

While some courts have found allegations of continued infringing activities sufficient to plead willfulness, such situations involved existing patents, coupled with multiple instances of express notice of the alleged infringement. *See Bobcar Media*, 2017 WL 74729, at *6. This case, which involved a pending continuation application and no allegations of notice, is distinguishable. *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (notice letter disclosing continuation

---

[10] The courts are in agreement that "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *Cf. WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016); *see also Scripps Research Inst. v. Illumina, Inc.*, No. 16-661, 2016 WL 6834024, at *7 (S.D. Cal. Nov. 21, 2016) (dismissing willfulness claims where plaintiff failed to plead knowledge).

application did not create inference of knowledge because "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents"); *FanDuel*, 2017 WL 58572, at *6 (dismissing willfulness claims where the relevant allegations concerned "a pre-suit Notice Letter that did not identify [the patents-in-suit] but only other patents that were part of a much larger portfolio" (quotation marks omitted)). Contrary to Plaintiff's argument, the allegations concerning "the pre-suit relationship between the parties" do not create a reasonable inference that "Defendants' actions go beyond those 'in a typical infringement case.'" Doc. 175, at 16 (quoting *Halo*, 136 S. Ct. at 1932). Plaintiff's willfulness claims are not plausible as to either Defendant, and the motion to dismiss will be granted.[11]

**D. Denial of Leave To Amend.**

Plaintiff has had three opportunities to plead its claims. Docs. 1, 95, 133. In addition, before filing the current motion to dismiss, Defendants conferred with Plaintiff about perceived deficiencies in the second amended complaint and Plaintiff declined to amend the complaint further. Doc. 142, at 5. Because Plaintiff has had ample opportunity to plead viable claims and this case is now well underway, the Court will not grant further leave to amend.

**IT IS ORDERED** that Defendants' motion to dismiss (Docs. 142 (redacted version), 147 (sealed version)) is **granted in part and denied in part**. The motion is granted as to Plaintiff's (a) direct infringement claims against Ibiden as to unnamed products sold to customers other than Intel, (b) indirect infringement claims related to the

[11] The Federal Circuit recently suggested that post-suit conduct alone can support a finding of willfulness. *Cf. Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017) (patentee seeking enhanced damages should not have been barred from presenting evidence of willful infringement that relied exclusively on post-suit conduct). But some courts have held that the "proper remedy" for "reckless" post-complaint behavior is "to ask the Court for a preliminary injunction, not to simply seek enhanced damages" in an amended complaint. *See FanDuel*, 2017 WL 58572, at *6; *see also McRO, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1123 (C.D. Cal. 2013). The Court need not decide this issue. Assuming a claim based exclusively on post-suit willfulness is available, it must still be pled. *See Monolithic Power Sys., Inc. v. Silergy Corp.*, 127 F. Supp. 3d 1071, 1076 (N.D. Cal. 2015) (required showing is the same for pre-and post-suit willfulness). As explained above, Plaintiff has pled no facts to support a claim of either pre- or post-suit willfulness.

unnamed Ibiden products intended for customers other than Intel, and (c) willfulness claims against both Defendants. The motion is denied as to Plaintiff's induced infringement claims against Intel.

Dated this 16th day of June, 2017.

David G. Campbell
United States District Judge