**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Continental Circuits LLC, | No. CV16-02026-PHX-DGC |
| Plaintiff, | |
| v. | **ORDER** |
| Intel Corporation, et al., | |
| Defendants. | |

Defendants have filed a motion to compel the disclosure of information related to litigation funding agreements in this case. The Court held a conference call with the parties on December 4, 2019 (Doc. 334), and the issues have now been briefed by the parties (Docs. 344, 349, 360). The Court will grant in part and deny in part Defendants' request.[1]

### I.    Background.

Plaintiff alleges that Defendants' products infringe several patents Plaintiff owns related to manufactured circuit boards. Plaintiff does not manufacture the products

---

[1] The parties have filed joint motions to seal exhibits G, H, K, L, and M to Defendants' briefs (Docs. 340, 362), Plaintiff's response (Doc. 350), and Defendants' reply brief (Doc. 362). The Court finds that the exhibits, response, and reply contain confidential information and testimony regarding the licensing of the patents-in-suit, Plaintiff's finances, and the interested parties in this lawsuit, that would have economic value to others and that is not generally known or readily ascertainable by proper means. The sealing of these documents will have little effect on the public's ability to understand the issues addressed in this order because lightly redacted copies of all briefs have been filed in the public docket. The Court finds good cause to seal and will grant the motions. This order will cite to publicly filed briefs and exhibits where possible, and will state when it is citing to a sealed document.

1  addressed in its patents or license its patents to others. Plaintiff has no business operations

2  other than owning the patents and asserting claims for their infringement.

3      Defendants' motion seeks production of what Defendants describe as "three

4  narrowly-tailored categories of documents and information relating to [Plaintiff's] third-

5  party litigation funding" – (1) any final litigation funding agreements between Plaintiff and

6  any third-party funders; (2) the identities of all persons or entities (other than counsel) with

7  a fiscal interest in the outcome of the litigation; and (3) the identities of any potential

8  litigation funders who declined to provide funding after being approached by Plaintiff or

9  its founder, Peter Trzyna. Doc. 344 at 2.[2] The Court will confine its analysis to these three

10  requests. The first request seeks the production of specific documents – litigation funding

11  agreements. The second and third requests seek information rather than documents.

12  Plaintiff resists disclosure on the basis of the work product doctrine. Plaintiff does not

13  argue that the discovery is barred by the attorney-client privilege. Because the work

14  product doctrine applies differently to documents than to intangible information, the Court

15  will address the first request separately from the second and third requests. Before doing

16  so, however, the Court will address the parties' relevancy arguments.

17  **II.      Relevancy.**

18      A party may obtain discovery regarding any nonprivileged matter that is relevant to

19  any claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

20  Relevant information need not be admissible at trial to be discoverable. *Id.*

21      Plaintiff contends that the requested documents and information are not relevant to

22  any claim or defense in this case. Defendants disagree, arguing that the documents and

23  information are relevant to refute any David vs. Goliath narrative at trial, to evaluate the

24  value of the patents at issue and any damages claimed by Plaintiff, to address bias and

25  prejudice of witnesses who may appear a trial, and to identify any jurors who may have a

26  relationship with a litigation funder. Doc. 344 at 4-6.

27  _____

28      [2] Citations in this order are to page numbers placed at the top of each page by the Court's electronic filing system, not to original page numbers at the bottom of each page.

Relevancy in civil litigation is a relatively low bar. Under Rule 401 of the Federal Rules of Evidence, information having "any tendency" to make a fact in dispute "more or less probable" is relevant. Fed. R. Evid. 401. And courts "generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016).

With the exception of Defendants' third request, the Court has little difficulty concluding that the requested documents and information are relevant. They concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial. Plaintiff claims that any such narrative is speculative, but Defendants are entitled to conduct discovery that may refute potential trial themes, and Defendants note that at least some evidence suggests that such a narrative will be asserted in this case. Doc. 363 at 8 (sealed document).

Plaintiff argues that the information and documents are not relevant to the value of the patents because Defendants can conduct factual discovery concerning the patents and Plaintiff will produce expert evidence on damages. Doc. 349 at 6. But the fact that some information bears on the value of the patents does not render irrelevant other information that could shed additional light on their value. Litigation funding agreements in a case such as this likely contain financial information related to the value of the litigation, and therefore to the value of the allegedly infringed patents, that will not be included in, or may contradict, the expert's report.

And to the extent persons affiliated with Plaintiff may receive substantial compensation through the litigation, that fact bears on their credibility. The identity of litigation funders who have a stake in the litigation will also help identify jurors, if any, who have a relationship with such funders.

Of course, the fact that information is relevant for purposes of discovery does not eliminate work product protection. Most information covered by the work product doctrine is relevant — often highly relevant — but it is protected nonetheless. Nor does the relevancy of the information mean that it will be admissible at trial. Admissibility will be

addressed later in this litigation.  For purposes of this motion, however, the Court does not accept Plaintiff's argument that Defendants' first and second requests are irrelevant.

The Court reaches a different conclusion on Defendants' third request for the identities of any potential litigation funders who declined to provide funding after being approached by Plaintiff or its founder, Peter Trzyna.  The identifies of such persons or entities, if they exist, have nothing to do with the actual financial interests or resources in this litigation, the potential bias of witnesses, or possible disqualification of jurors. Defendants might contend that communications with these persons or entities could bear on the value of the patents, but such an assertion is entirely speculative.  The Court agrees that "*potential* litigation funding is a side issue at best."  *Space Data Corp. v. Google LLC*, No. 16-CV-03260 BLF (NC), 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) (emphasis in original).  The Court concludes that the information sought in Defendants' third request is not relevant and not discoverable under Rule 26.  The Court will not address the third request further, and will turn to the parties' work product arguments with respect to the first and second requests.

**III.    First Request – Production of Litigation Funding Agreements.**

Under the work product doctrine codified in Rule 26 of the Federal Rules of Civil Procedure, Defendants generally may not obtain discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by and for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  This protection may be overcome, however, if Defendants show that they have a "substantial need for the materials" and cannot "obtain their substantial equivalent by other means."  *Id.*  Even if Defendants make this showing, they cannot obtain core work product — information revealing "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

/ / /

/ / /

### A.    Are the Funding Agreements Work Product?

Plaintiffs have submitted several litigation-funding-related agreements to the Court for *in camera* review.  The Court has reviewed each of the agreements.  The Court does not consider the fact that the agreements exist to be protected information under the work product doctrine.  That fact constitutes intangible information that does not reveal the mental impressions or strategies of the attorneys, as discussed more fully in part IV of this order.

Defendants initially argued that funding agreements do not qualify for work product protection because they were not created "for use" in litigation. Doc. 344 at 8.  Defendants now agree, however, that the Ninth Circuit has adopted the broader "because of" standard. Doc. 360 at 2.  As the Ninth Circuit explained:

> [W]e join a growing number of our sister circuits in employing the formulation of the "because of" standard articulated in the Wright & Miller Federal Practice treatise.  This formulation states that a document should be deemed prepared "in anticipation of litigation" and thus eligible for work product protection under Rule 26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation."

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024 (2d ed. 1994)).

Litigation funding agreements are created "because of" the litigation they will fund. Defendants argue, however, that the agreements in this case were not created solely because of this litigation.  They note that Plaintiff is a non-functioning entity that has no business other than filing lawsuits against alleged infringers of its patents – and no other source of revenue – and argue that the funding agreements were therefore "created for the independent purpose of providing Continental Circuits with funding to conduct its business and ease costs that would otherwise fall on [its founder]." Doc. 360 at 2.  Although not entirely clear, Defendants appear to contend that work product protection does not apply

1   because of this second purpose.  But even if Defendants are correct that the funding

2   agreements have an additional business-support purpose, this does not defeat work product

3   protection.

4           The Ninth Circuit has identified the work product analysis to be applied to "dual

5   purpose" documents:

6           The "because of" standard does not consider whether litigation was a
7       primary or secondary motive behind the creation of a document.  Rather, it
        considers the totality of the circumstances and affords protection when it can
8       fairly be said that the document was created because of anticipated litigation,
9       and would not have been created in substantially similar form but for the
        prospect of that litigation[.]
10

11  *In re Grand Jury Subpoena*, 357 F.3d at 908.  "When there is a true independent purpose

12  for creating a document, work product protection is less likely, but when two purposes are

13  profoundly interconnected, the analysis is more complicated." *Id.*

14          Considering the totality of the circumstances, the Court concludes that any business-

15  sustaining purpose of the litigation funding agreements in this case is "profoundly

16  interconnected" with the purpose of funding the litigation.  This litigation is the essential

17  activity of Plaintiff's business, and the funding agreements reviewed by the Court concern

18  the funding of this lawsuit.  Even if some of the funds obtained through the agreements

19  will be used to sustain Plaintiff and its operation, the Court cannot separate that purpose

20  from this lawsuit, which is the very object of the operation.  Applying the Ninth Circuit's

21  standard for dual purpose agreements, the Court finds that the agreements in this case

22  would not have been "created in substantially similar form but for the prospect of [the]

23  litigation[.]" *Id* (citation omitted).  The agreements therefore satisfy the "because of" test

24  and constitute work product.  This conclusion comports with decisions of several other

25  courts. *See Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd.*, 3:15-cv-01738-H (RBB),

26

27

28

1    2016 WL 7665898, at * 5 (S.D. Cal. Sept. 20, 2016) (collecting cases according work

2    product protection to litigation funding agreements).[3]

3        **B.    Waiver.**

4        Defendants argue that Plaintiff has waived the work product protection by sharing

5    the funding agreements with the litigation funders and by failing to include the agreements

6    in its privilege log.  The Court does not agree.

7        Work product protection is not waived merely because work product is shared with

8    another person or entity.  As courts have explained:

9        "The work product privilege is very different from the attorney-client
10       privilege.  The attorney-client privilege exists to protect confidential
         communications and to protect the attorney-client relationship and is waived
11       by disclosure of confidential communications to third parties.  The work
12       product privilege, however, does not exist to protect a confidential
         relationship but to promote the adversary system by safeguarding the fruits of
13       an attorney's trial preparations from the discovery attempts of an opponent."

14

15   *Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 383-84 (D. Ariz. 2010) (quoting

16   *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989)).

17       Because the work product doctrine protects against disclosure to potential

18   adversaries and not the world in general, courts have recognized that work product

19   protection may be lost when a disclosure substantially increases the opportunity for

20   potential adversaries to obtain the information.  *Bickler*, 266 F.R.D. at 384.  After

21   identifying this standard for the parties, the Court asked Defendants to explain what

22   disclosure Plaintiff has made that would increase the opportunity for adversaries to obtain

23   the funding agreements.  Doc. 358.  Defendants failed to respond to this question.  *See*

24   Doc. 360.

25   _____

26       [3] Defendants argue that even if work product protection attaches to the litigation
     funding agreements, Plaintiff itself is not alleging those agreements are work product, but
27   rather an unidentified third party is making the assertion.  This misstates Plaintiff's
     position.  *See* Doc. 344-1 at 43, 45, 48, 50.
28

1        The Court cannot conclude that disclosure of the litigation funding agreements to

2 the litigation funder – a party to the agreements – substantially increased the opportunity

3 for Plaintiff's litigation adversaries to obtain the agreements.  The funding agreement

4 documents reviewed by the Court include confidentiality provisions with respect to the

5 agreements and information related to them.

6        Courts also hold that "'[d]isclosure to [a] person with interest common to that of

7 attorney or client is not inconsistent with intent to invoke the work product doctrine's

8 protection and would not amount to waiver.'"  *Cal. Sportfishing Prot. Alliance v. Chico*

9 *Scrap Metal, Inc.*, 299 F.R.D. 638, 645 (E.D. Cal. 2014) (quoting *In re Doe*, 662 F.2d 1073,

10 1081 (4th Cir. 1981)).  "In the context of work product, common interest is more broadly

11 construed to include disclosure to third parties."  *Odyssey*, 2016 WL 7665898, at *6

12 (citation omitted).  Documents reviewed *in camera* by the Court recognize a common

13 interest between Plaintiff and the funder.

14        Consistent with this conclusion, several courts have held that work product

15 protection for litigation funding documents is not waived when such documents contain

16 confidentiality provisions and are disclosed to litigation funders with common interests.

17 *Id.* (finding no waiver of work product protection where disclosure to third parties occurred

18 pursuant to confidentiality agreements and an expectation that the information would

19 remain confidential); *United States v. Ocwen Loan Serv., LLC*, No. 4:12-CV-543, 2016

20 WL 1031157, at *6 (E.D. Tex. March 15, 2016) (finding attorney work product protection

21 not waived by disclosure to a potential litigation funder because the funder has an inherent

22 interest in maintaining the confidentiality of potential clients' information); *Mondis Tech.,*

23 *Ltd. v. LG Elecs., Inc.*, 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May

24 4, 2011) ("[A]lthough these documents [regarding litigation funding] were disclosed to

25 third parties, the disclosures do not create a waiver because they were disclosed subject to

26 [nondisclosure] agreements and thus did not substantially increase the likelihood that an

27 adversary would come into possession of the materials.").

28

Nor does the Court find that Plaintiff waived work product protection by failing to identify the funding agreements in its privilege log. The Ninth Circuit has rejected a *per se* waiver rule when documents are not identified in a privilege log. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Factors to be considered in deciding whether waiver has occurred include the timeliness of objections and whether the parties and the Court have enough information to evaluate any work product claim. *Id.* Here, Plaintiff responded to Defendants' request for production of litigation funding agreements by asserting the work product doctrine and stating that any such documents were not discoverable. Doc. 344-1 at 20. Plaintiff made a similar objection to Defendants' request for the identities of persons with a financial interest in the litigation. *Id.* at 32. These timely objections and the subsequent conference call and briefing have enabled the Court and the parties to address Plaintiff's assertion of work product protection.

The Court finds that work product protection for the funding agreements has not been waived.

### C. Substantial Need.

As noted above, the work product protection provided by Rule 26(b)(3) may be overcome if Defendants show that they have a "substantial need for the materials" and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Defendants contend that they have a substantial need to discover information "such as the identities of the litigation funders, the timing of the investment, the amount of money invested, and the potential return on investment," and that they cannot obtain such information elsewhere. Doc. 360 at 6. But Defendants argue only that the information is relevant; they never explain why their need for the information is substantial.

The Advisory Committee Note to Rule 26(b)(3) makes clear that a "special showing" must be made to overcome work product protection. Fed. R. Civ. P. 26(b)(3) advisory committee's note to 1970 amendment. That showing requires more than mere relevancy. As a well-regarded treatise has noted: "Substantial need for material otherwise

1  protected by the work product doctrine is demonstrated by establishing that the facts

2  contained in the requested documents are essential elements of the requesting party's prima

3  facie case."  6 Moore's Federal Practice - Civil § 26.70 (2019); *see also Nevada v. J-M*

4  *Mfg. Co.*, 555 F. App'x 782, 785 (10th Cir. 2014) ("A substantial need exists where the

5  information sought is essential to the party's defense, is crucial to the determination of

6  whether the defendant could be held liable for the acts alleged, or carries great probative

7  value on contested issues.") (quotation marks and footnotes omitted); *Fletcher v. Union*

8  *Pac. R.R. Co.*, 194 F.R.D. 666, 671 (S.D. Cal. 2000) (citing standard from Moore's Federal

9  Practice).[4]

10  Defendants have not shown that obtaining the litigation funding agreements is

11  essential to an element of their defense or the preparation of their case.  Because they have

12  not shown a "substantial need" as required by Rule 26(b)(3)(A)(ii), the Court concludes

13  that they are not entitled to production of the agreements.

14  **IV.    Second Request – Intangible Work Product.**

15  Although Rule 26(b)(3) applies only to documents and tangible things, the work

16  product doctrine established by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495

17  (1947), is not so limited.  As one court has explained:

18

19

---

20  [4] At least one court has concluded that the Rule 26 work product protection can be
overcome by demonstrating "that the materials are relevant to the case, the materials have
21  a unique value apart from those already in the movant's possession, and 'special
circumstances' excuse the movant's failure to obtain the requested materials itself." *F.T.C.*
22  *v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 155 (D.C. Cir. 2015).  To the extent
this case adopts a mere relevancy standard, the Court concludes that it provides too low a
23  threshold for access to work product and misreads the Advisory Committee Note to Rule
26(b)(3).  The note repeatedly states that a party seeking to overcome work product
24  protection must make a "special showing," and instructs that the showing should address
"the *importance of the materials sought to the party seeking them in preparation of his*
25  *case* and the difficulty he will have obtaining them by other means[.]"  Fed. R. Civ. P.
26(b)(3) advisory committee's note to 1970 amendment (emphasis added).  The note also
26  clearly states that it is following *Hickman v. Taylor*, 329 U.S. 495 (1947), the Supreme
Court's seminal decision on work product, and *Hickman* states that "[w]here relevant and
27  non-privileged facts remain hidden in an attorney's file and where production of those facts
*is essential to the preparation of one's case*, discovery may properly be had."  *Id.* at 511
28  (emphasis added).  "Essential to the preparation of one's case" is more than merely
relevant.

The government mistakenly assumes that Rule 26(b)(3) provides an exhaustive definition of what constitutes work product. On the contrary, Rule 26(b)(3) only partially codifies the work-product doctrine announced in *Hickman*. Rule 26(b)(3) addresses only "documents and tangible things," but *Hickman*'s definition of work product extends to "intangible" things. 329 U.S. at 511. Moreover, in *Hickman*, the Court explained that the attorney's "mental impressions" were protected from discovery, so that he could not be forced to "repeat or write out" that information in discovery. *Id*. at 512-13. Thus *Hickman* provides work-product protection for intangible work product independent of Rule 26(b)(3).

*United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010); *see also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003).

As noted in this explanation, the purpose of extending work product protection to intangible information is to shield an attorney's mental impressions from discovery. Plaintiff cites no authority suggesting that every unwritten fact collected or developed by an attorney in preparation for litigation is protected from discovery. Defendants second request – for the identities of all persons or entities (other than counsel) with a fiscal interest in the outcome of the litigation – does not seek attorney mental impressions. The Court therefore concludes that these facts are not protected from discovery by the work product doctrine.[5]

**IT IS ORDERED:**

1.      Defendants' motion to compel (Doc. 344) is **granted in part and denied in part**. Plaintiffs shall provide Defendants with the identities of all persons or entities (other than counsel) with a fiscal interest in the outcome of this litigation within five business days of this order.

---

[5] As noted early in this order, the Court likewise concludes that the fact of the funding agreements' existence does not disclose attorney mental impressions and therefore is not shielded from discovery by the work product protection for intangible information.

1       2.     The parties' joint motions to seal (Docs. 340, 350, 362) are **granted**.  The

2   Clerk is directed to accept for filing under seal Docs. 341, 351, 363 and 364.  The Clerk is

3   further directed to maintain the numbering of the sealed documents as currently indicated

4   on the docket.

5       Dated this 27th day of January, 2020.

6

7

8   _____

9   David G. Campbell
10  Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28